The Second National Bank of New Albany *v.* The Town of Danville.

---

THE SECOND NATIONAL BANK OF NEW ALBANY *v.* THE TOWN OF DANVILLE.

Town.—*Power to Purchase for Cash.*—*Fire Department.*—*Statute Construed.*— By clause 3, section 22, of the act of June 11th, 1852, providing " for the incorporation of towns," etc., 1 R. S. 1876, p. 874, the board of trustees of a town incorporated under such act is authorized to purchase " necessary apparatus for the extinguishment of fires," for cash.

Same.—*Power to Contract Debts.*—*Petition by Tax-Payers.*—Under section 27 of the same act, such board may, on the presentation of the petition required by such section, purchase such apparatus on credit.

Same.—*Power to Execute Promissory Note.*—Such purchase may be made simply by a parol contract, or, where the manner in which such debt is to be contracted is not prescribed by such petition, the board may direct that a promissory note, payable in bank or otherwise, shall be executed in the name of the town, by the president of the board, payable to the person furnishing the apparatus.

Same.—*Ordinance to Issue Bonds.*—The fact that, upon the presentation of such petition, and pending the negotiation for the purchase of such apparatus, an ordinance is passed for the issue and sale of bonds of the town to realize means for the purchase of such apparatus, does not, where in fact no such bonds are issued, exhaust the power of the board, under

such petition, to make such purchase in some other manner, though such ordinance remain unrepealed.

SAME.—*Remonstrance to Petition.*— *Withdrawal of Signatures.*—Where, after a board of trustees had granted the prayer of such petition, and entered into negotiations to make the purchase prayed for, the fact that a remonstrance was presented to the board, purporting to be, but unaccompanied by any evidence that it was, signed by a sufficient number of the signers of the petition to reduce the qualified signers thereon below the five-eighths required, will not avoid a contract subsequently entered into by the board, pursuant to such petition.

From the Hendricks Circuit Court.

*T. J. Cofer, N. M. Taylor* and *J. G. Adams,* for appellant.

*J. V. Hadley,* for appellee.

PERKINS, J.—Suit upon a promissory note of the town of Danville, payable at a bank in this State, given to the Champion Fire Extinguisher Company, and assigned to the plaintiff.

Issues were formed and submitted to the court for trial. The court made a special finding, which we copy:

"The court, being by the defendant thereto specially requested, finds the facts in this case as follows:

"On the 20th day of November, 1874, there being no funds in the treasury subject to purposes hereinafter specified, there was presented to the Board of Trustees of the town of Danville, Hendricks county, Indiana, a petition signed by the citizen owners of five-eighths of the taxable property of said town, evidenced by the assessment roll of the previous year, praying said board to negotiate a loan in any manner that seemed best to said board, and to purchase with the funds thus procured a fire engine, or some other machinery, for the purpose of extinguishing fires. On the 21st of November, 1874, the board met and appointed a committee to investigate the matter, who visited Louisville, Ky., for that purpose. November 27th, committee report, and committee appointed by the board to ascertain if the bonds of the town can be sold to amount of $2,000, at not less than 94 cents on the

dollar; and, if they found this could be done, to order the Champion Fire Extinguisher Company, of Louisville, to furnish one of their machines, in pursuance of their written proposition theretofore received, for trial by the tests proposed. December 4th, the board sent an agent to Indianapolis to consult a chemist about the machine. December 12th, 1874, the committee report, that they believe the bonds can be sold on the terms prescribed. And the Extinguisher Company is ordered to send one of their machines to be tested, and, if rejected, company to bear expenses. The town attorney is directed to prepare an ordinance for issue and sale of bonds to purchase the machine, and paid said attorney therefor.

"December 15th, the board passed an ordinance providing that there be issued and negotiated, at not less than 94 cents on the dollar, coupon bonds of the denomination of $500 each, the aggregate not to exceed $3500, chargeable upon the funds in the treasury of said town, to be thereafter raised by taxation for that specific purpose, and redeemable as follows: One of said bonds on the 1st day of July, 1877, and one annually thereafter on the 1st day of July until all are paid, with interest at 10 per cent. per annum, payable semi-annually; the proceeds of the bonds to be paid to the treasurer, to be applied by him in discharge of any liability the board might thereafter, or had theretofore, incurred in the purchase of a fire engine, building engine houses and defraying expenses in carrying out the ordinance.

"This ordinance has never been repealed or modified.

"January 6th, 1875, agent of company visits board, but no conclusion as to buying machine arrived at. January 9th, 1875, a remonstrance is presented to the board, signed by numerous citizens, among them enough of the signers of the original petition, praying that their names be withdrawn from the same, to reduce the signatures thereto below the necessary five-eighths, no evidence being offered to the board of this fact. This re-

monstrance was not sworn to, nor the signatures certified by affidavit or otherwise.

"March 12th, 1875, the board decide to buy the machine.

"March 15th, 1875, board buy the machine for $2,500; $500 down, the residue in three equal payments, for which the president of the board is authorized to sign notes and a mortgage on the machine, which he did, one of said notes being the note sued upon.

"And the court finds, as a conclusion of law, from the facts above found, that the board, having acted upon the petition by the passage of the ordinance for the issuing and sale of the bonds of the town, which remained in force at the time the note in suit and others were executed, had exhausted their power to involve the town in debt under said petition; and, while said ordinance remained in force, the board had no power, in virtue of said petition, to create a new and further liability on the part of the town by the execution of said promissory notes; and that it is immaterial to the decision of the case what was the effect of the withdrawal of names from the petition, since it did not, if valid, authorize the execution of the note sued upon.

"LIVINGSTON HOWLAND, Judge.

"And the plaintiff excepts to the conclusions of law of the court upon the special finding of facts by the court.

"And thereupon it is considered by the court, that said defendant recover of said plaintiff her costs and charges therein laid out and expended, taxed at fourteen dollars and seventy cents.

"Thereupon the plaintiff prays an appeal to the Supreme Court of the State of Indiana, which is granted."

The appellant assigns for error in this court, that the circuit court erred in its conclusions of law.

The appellee assigns, as a cross-error, that the court erred in overruling the demurrer to the complaint.

We proceed to the consideration of the cause.

The statute of this State for the incorporation of towns, and defining their powers, gives them, among others, these two :

· 1.   " To organize fire companies, hook and ladder companies; to regulate their government, and the times and manner of their exercise; to provide all necessary apparatus for the extinguishment of fires;" and to purchase for them the necessary real and personal property.   1 R. S. 1876, p. 878, sec. 22, clause 3.

2.   To incur a debt, on proper petition from the taxpayers of the towns, severally; and, to pay any debt incurred, it is made the duty of the board to levy a tax, etc.   1 R. S. 1876, p. 881, sec. 27.

These two powers are given in two separate sections of the act, one in each; the power to purchase the engine in the first, and the power to incur the debt, that is, to purchase on credit and raise the money by taxation to pay the debt, in the second.   We copy the second :

" Sec. 27.   No incorporated town under this act shall have power to borrow money or incur any debt or liability, unless the citizen owners of five-eighths of the taxable property of such town, as evidenced by the assessment roll of the preceding year, petition the board of trustees to contract such debt or loan; and such petition shall have attached thereto an affidavit verifying the genuineness of the signatures to the same; and for any debt created thereby, the trustees shall add to the tax duplicate of each year successively a levy sufficient to pay the annual interest on such debt or loan, with an addition of not less than five cents on the hundred dollars to create a sinking fund for the liquidation of the principal thereof."

The first of the sections of the statute authorized the town to purchase an engine for cash.   The second gave the town power, on the proper petition, to contract a debt in two modes : one by purchasing an engine on credit,

and the other to create a debt, by way of a loan, to raise the money to pay for it on its purchase. Before the town knew, so far as appears, what the engine might cost, and whether it could be purchased on credit, her board of trustees, under a proper petition, passed an ordinance for raising the money necessary to pay for the engine, by the sale of bonds of the town. But when, three months afterward, she purchased the engine, it was discovered that it was not necessary to create so large a debt as authorized by the ordinance, and that the debt to be created could be in the form of notes to the engine company, instead of bonds of the town, to be sold at a discount of six per cent. The board, therefore, wisely concluded to issue no bonds under the ordinance, and to evidence the debt for the engine by executing her promissory notes to the seller thereof. That the board had the power to do this, we have no doubt. The act was clearly within the statute—the charter of the town—and within the discretion given by the petition. The ordinance only provided a mode for raising funds with which to pay for an engine that might be thereafter purchased. No funds were ever raised under it, and the question is, did the mere passage of that ordinance exhaust the power of the board of trustees to purchase an engine on credit, as the charter of the town authorized them to do? We can not assent to the proposition that it did. The act was judicious, as it worked a great saving to the tax-payers of the town. It was not necessary that the contract for the engine should be made by ordinance, nor by written instrument. It might be purchased by parol, and, in this case, on credit, and notes, commercial or otherwise, might be executed for the price by the board of trustees of the town. *Sheffield School Township* v. *Andress*, 56 Ind. 157 ; Daniel on Negotiable Instruments, sec. 382, and n. 3. See, upon this subject, generally : *The Evansville, etc., R. R. Co.* v. *The City of Evansville*, 15 Ind. 395 ; *The City of Indianapolis* v. *Miller*, 27 Ind. 394; *Thompson* v. *The City of Peru*, 29 Ind. 305.

The case of *Halstead* v. *The Board of Comm'rs of Lake Co.*, 56 Ind. 363, in principle, supports the decision we here make. We think the plaintiff appears, on the record of this case, to be entitled to judgment on the note. Of the manner of the collection of the judgment we will not now speak. Whether by execution on the judgment, or proceedings by mandate to compel the levy of a tax, etc., or whether the board might still issue and sell bonds under the ordinance to pay the notes given for the engine, we intimate no opinion.

The judgment is reversed, with costs, for further proceedings, in accordance with this opinion.

Howk, J., was absent on the decision of this cause.

### On petition for a rehearing.

Perkins, J.—A petition for a rehearing is presented. The rehearing is asked on two grounds:

1. Because the court did not expressly decide as to the effect of the remonstrance mentioned in the special finding in the case;

2. Because there is no mandate to the court below to render judgment for the plaintiff.

It is not necessary that a rehearing should be granted to remedy the defects mentioned. By deciding that the plaintiff was entitled to judgment, the court virtually decided that the particular remonstrance in this case did not invalidate the previous petition. As we understand the special finding, it being somewhat uncertain on this point, it states, that, after the trustees had entered upon negotiations for an engine, a remonstrance, with names upon it sufficient in number to reduce the number of signers to the petition below five-eighths of the owners of the taxable property of the town, was presented, but no evidence was furnished of the qualification of the signers or the genuineness of the signatures.

The qualification of the signers, and the genuineness of their signatures, and the sufficiency of the number thereof, to the petition, had been established before the trustees of the town, and that body could not discard their names from, and thus invalidate, the petition, until it was shown that they asked it to be done. It was not so shown in this case, and the trustees proceeded under the petition to purchase the engine. After this it was too late to invalidate a petition valid when the debt was contracted on the faith of it.

The mandate to the court below will be, that the judgment of the court below is reversed, with costs, and the cause remanded, with instructions to that court to render judgment for the amount due, in favor of the plaintiffs.

The petition for a rehearing is overruled.

Original opinion filed at November term, 1877.

Opinion overruling petition filed at May term, 1878.