## CITY OF SAVANNAH *v.* KELLY.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF GEORGIA.

Decided April 2d, 1883.

*Municipal Corporations—Statutes, Construction of—Repeal of.*

1. A statute which authorized a municipal corporation "to obtain money on loan on the faith and credit of said city for the purpose of contributing to works of internal improvement," is not repealed by implication by a subsequent statute which, reciting that doubts had arisen respecting bonds theretofore issued, enacted that "all bonds heretofore issued by the constituted authorities of the city are valid, and from and after the passage of this act, the mayor and aldermen of the city, upon a recommendation of a public meeting of the citizens called for that purpose, shall have power and authority to cause bonds to be issued and disposed of in such manner as they may direct, for purposes of internal improvement."

2. A statute authorizing a municipal corporation to obtain money on loan on the faith and credit of the city, for the purpose of contributing to works of internal improvement, authorizes the municipality to guarantee the payment of the bonds of a railway company.

Action against the municipality of Savannah to recover on a guaranty of the payment of the principal and interest of the bonds of the Savannah, Albany & Gulf Railroad Company.

In an act relating to the city of Savannah, passed on the 27th of December, 1838, the legislature of Georgia enacted that the mayor and aldermen of said city be and they are hereby authorized and empowered to obtain money on loan on the faith and credit of said city, for the purpose of contributing to works of internal improvement.

Under this authority bonds were issued, whose validity was questioned after issue, and thereupon the legislature on the 4th March, 1856, enacted as follows :

" And whereas, doubts have been entertained whether certain bonds issued and disposed of by the city of Savannah for internal improvements, were legal and valid, therefore, be it further enacted, that all bonds heretofore issued by the constituted authorities of the city of Savannah, are hereby declared legal and valid, and from and after the passage of this act, the mayor and aldermen of the city of Savannah, and the hamlets thereof, upon the recommendation of a public meeting of the citizens of Savannah, called for the purpose, shall have power and authority to cause bonds to be issued and disposed of in such manner as they may direct, for purposes of internal improvement, which bonds so issued shall be legal and valid."

The contentions in this suit were upon the proper construction of these statutes : 1st, whether the act of 1838 empowered the municipality to guarantee the bonds of a railroad corporation ; and 2d, whether, conceding that it did confer that power, it was repealed by the act of 1856. The transactions out of which the issues in controversy arose took place in 1858, and are set forth in the opinion of the court.

*Mr. Walter S. Chisholm* and *Mr. A. R. Lawton* for the plaintiff in error.—I. As to the construction of the act of 1838 : The authority to *issue* railroad aid bonds is not one of the ordinary powers of a municipality. Express authority for it is required, and this authority must be exercised in conformity with

prescribed forms. Jones on Railroad Securities, § 296; *Rogers* v. *Burlington*, 3 Wall. 654; *Head* v. *Providence Insurance Company*, 2 Cranch, 127; *Scipio* v. *Wright*, 101 U. S. 665, Burroughs' Public Sec. pp. 206–211. In *Head* v. *Providence Insurance Company*, Marshall, C. J., delivering the opinion of the court, said: "The act of incorporation is to them an enabling act; it gives them all the power they possess; it enables them to contract, and when it presents to them a mode of contracting they must observe that mode or the instrument no more creates a contract than if the body had never been incorporated." The supposed obligation of the city is a technical *guaranty*. It is a promise to pay the debt to another. It is a contract to *insure* the solvency of the Albany & Gulf Railroad to the amount of $300,000, bearing semi-annual interest at seven per cent. per annum for twenty years. 2 Daniel on Negotiable Instruments, §§ 1752, 1753. A greater power may include the lesser when they are of the same nature or kind. But "the note and the guaranty are not one and the same thing. The note is the debt of the maker, the guaranty is the engagement of the defendant that the maker shall pay the note when it becomes due. A joint action will not lie against them both. They are not the same, but different and distinct contracts." *Brewster* v. *Silence*, 8 N. Y. 207; *Hall* v. *Farmer*, 5 Denio, 484; *Oxford Bank* v. *Haynes*, 8 Pick. 427; *Floyd Acceptances*, 7 Wall. 666. "Although a municipal corporation may have power directly to accomplish a certain object, and itself expend its revenues or money therefor, yet this does not give or include the power to lend its credit to another who may be empowered to effect the same object. Expending money by a city council as agents or administrators of their constituents is a very different thing from binding their constituents by a contract or suretyship—'a contract which carries with it a lesion by its very nature.'" 1 Dillon Municipal Corporations, § 471 (393); *Blake et al.* v. *The Mayor of Macon*, 36 Ga. 172. See also *Marsh* v. *Fulton County*, 10 Wall. 676; *Thomas* v. *Railroad Company*, 101 U. S. 71; *Police Jury* v. *Britton*, 15 Wall. 566; *Town of South Ottawa* v. *Perkins*, 94 U. S. 260; *East Oakland* v. *Skinner*, 94 U. S. 255; *Colomo* v.

*Eaves,* 92 U. S. 484; *Marcy* v. *Oswego,* 92 U. S. 637; *Humboldt* v. *Long,* 92 U. S. 642.—II. As to the repeal of the act of 1838, by the act of 1856, the counsel contended that it was the manifest intent of the legislature to substitute the new provision for the old one. " If a subsequent statute be not repugnant in all of its provisions to a prior one, yet, if the later statute clearly intended to prescribe the only rules which should govern, it repeals the prior one." *Daviess et al.* v. *Fairborn,* 3 How. pp. 636, 645.

*Mr. George A. Mercer* for the defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The Savannah, Albany & Gulf Railroad Company was a corporation of Georgia, authorized to construct and operate a railroad, the principal and beginning point of which was the city of Savannah. That city was, in fact, owner of more than one-half of its capital stock, which it had subscribed in pursuance of law to aid in its construction. For purposes of construction, that is, partly to pay debts incurred for construction then made, and partly to pay for future improvements, the railroad company in 1859 made an issue of its bonds in the usual form, payable to bearer, twenty years after date, amounting in the aggregate to $300,000, bearing interest at the rate of seven per cent. per annum. On each of this series of bonds there was indorsed the following :

" State of Georgia. For value received, the Mayor and Aldermen of the City of Savannah and hamlets thereof, hereby, as authorized by a public meeting of the citizens thereof, held on the 14th day of May, 1859, guarantee the payment of the within bond, principal and interest, as the same may become due, according to the tenor thereof. Witness the hand of the mayor, with the seal of said corporation affixed. [Seal of city.] Thomas M. Turner, mayor. Attest : Edward G. Wilson, clerk of council."

The bonds were issued with this guaranty indorsed, and were purchased in open market for value. The present action was brought by the defendant in error to enforce the liability of the city of Savannah upon this guaranty. And it is not denied

that the city is liable upon it, if at the time it was made there was authority of law for the city to bind itself in that form for such purposes. The judgment of the circuit court affirms this liability, and is sought to be reversed, upon this writ of error, for that cause.

The fifth section of an act which took effect December 27th, 1838, entitled "An Act to extend the limits of the city of Savannah, and to authorize the corporate authorities of said city to borrow money for works of internal improvement," authorizes the mayor and aldermen "to obtain money on loan, on the faith and credit of said city, for the purposes of contributing to works of internal improvements." This provision is relied on as conferring authority for the guaranty in question.

It is claimed, however, on behalf of the plaintiff in error, that this provision of the act of 1838 was not in force at the date of the guaranty, having been repealed by an act of March 4th, 1856. Wilson's Dig. 526. This act expressly repeals only such acts as conflict with it, and the repeal, if effected, must be, therefore, by implication. The 8th section of the act of 1856 is supposed to have wrought this result. It is as follows:

"And whereas, doubts have been entertained whether certain bonds issued and disposed of by the city of Savannah for internal improvements were legal and valid, therefore, be it further enacted, that all bonds heretofore issued by the constituted authorities of the city of Savannah are hereby declared legal and valid, and from and after the passage of this act the mayor and aldermen of the city of Savannah, and the hamlets thereof, upon the recommendation of a public meeting of the citizens of Savannah, called for that purpose, shall have power and authority to cause bonds to be issued and disposed of in such manner as they may direct, for purposes of internal improvement, which bonds, so issued, shall be legal and valid."

Whether the latter repeals the former law depends on whether the two are inconsistent; and in the present instance, that depends on whether it is manifest from the words of the enactments that both cover the same ground, and that the

latter was intended to be a substitute for the former. The act of 1856 relates entirely to the issue of bonds by the city of Savannah; the act of 1838 does not specify bonds at all as a mode of obtaining money on loan, on the faith and credit of the city. If it be assumed that the only mode by which that could be done under the act of 1838 was by issuing bonds, it might then be argued that the two acts covered the same subject, and the latter was designed to supersede the former. But to assume that construction of the act of 1838 to be correct, is to beg the question at issue, which is, whether that act requires the issue of bonds as the exclusive mode of obtaining money on loan on the faith and credit of the city. For if it does not, there is no inconsistency between the two statutes, and the act of 1838 is not repealed. Whether it be repealed, then, depends on what it means; and if it authorizes a guaranty such as that sued on, then it is not repealed; unless it might be supposed that the term "bonds," used in the act of 1856, was generic and not technical, and was designed to embrace every form of obligation, whereby the city might extend the aid of its credit to purposes of internal improvement. In that event, the repeal of the act of 1838 might be effected, by conceding that the act of 1856 was large enough to embrace every case, even that of a guaranty, which might have been included in the act of 1838.

But conceding, as we are disposed to do, for the purposes of this case, that the term "bond," as used in the act of 1856, is to be taken in a strict sense, as confined to direct municipal obligations in the usual form of securities known as such, then we are clear that the act of 1838 is not repealed by any necessary implication; because it is not confined to the case of bonds of that description; and the question remains whether it fairly includes that of an obligation such as the guaranty sued on. The argument for the plaintiff in error moves in a circle. It is, that the act of 1838 does not confer authority to make the guaranty, because it is repealed; and that it is repealed, because it does not confer authority to make a guaranty.

The language of the act of 1838 is broad and unqualified. It confers upon the mayor and aldermen plenary power "to obtain money on loan, on the faith and credit of said city for the

purposes of contributing to works of internal improvement."
The money paid for the guaranteed bonds was obtained on
loan and upon the faith and credit of the city, and it was for
the purpose of contributing to works of internal improvement.
The fact that it was not advanced directly to the city, but,
upon its assurance of repayment, to the railroad company, is
not a departure even from the letter of the law, much less its
meaning; nor does the fact that the money was advanced
partly on the credit of the railroad company diminish the pre-
sumed reliance of the purchaser upon that of the city, with
which it was joined. It is difficult to conceive of language
more comprehensive than that employed, to embrace every
form of security in which the faith and credit of the city might
be embodied; and that in such cases it is not important to the
character of the transaction that the money is obtained in the
first instance by the railroad company, upon the credit of the
city, was directly ruled in *Rogers* v. *Burlington*, 3 Wall. 654,
and affirmed in *Town of Venice* v. *Murdock*, 92 U. S. 494. If
the city of Savannah had, by virtue of an arrangement with
the railroad company, received from the latter its bonds, and
had itself, having indorsed the guaranty in suit, delivered
them after sales to purchasers, and, receiving the money, had
paid it over to the railroad company as a contribution to pur-
poses of internal improvement, the transaction could not have
been made the subject of a cavil, as unauthorized by the act of
1838; and yet this is the precise legal equivalent of the trans-
action as made. We have no hesitation in saying that it is
equally embraced within the meaning of that statute, and that
the act in question was in force at the date of the guaranty,
and accordingly governs it. The substance of the transaction
was, that, in consideration of the money advanced to the rail-
road company as a loan on the faith and credit of the city, the
latter required the railroad company to indemnify it against
loss on that account, a precaution which no implication in the
statute forbids, and that result was accomplished by the form
of the obligation, by which the railroad company became the
principal debtor, and the city of Savannah guarantor merely of
its bonds.

It does not detract from the force of this conclusion that the guaranty recites that it was authorized by a public meeting of the citizens thereof, as if it were the case of bonds issued under the act of 1856, which required the recommendation of such a meeting. But if the fact is immaterial, the recital is not injurious. And the official record of the transaction shows that such a meeting was held for the purpose of quieting doubts, and not to raise them. The authorities of the city at that time were only anxious to omit nothing which the most critical might regard as important in securing for its obligations all the weight and value properly belonging to an unquestionable pledge of its faith and credit; and certainly now, after the lapse of twenty years, in which no such question has been raised, it would, in the language of Mr. Justice Grier, in *Mercer County* v. *Hacket*, 1 Wall. 83, "be contrary to good faith and common justice to permit them to allege a newly discovered construction of an equivocal power." *Van Hostrup* v. *Madison City*, 1 Wall. 291; *Meyer* v. *City of Muscatine*, 1 Wall. 384; *James* v. *Milwaukee*, 16 Wall. 159.

In our opinion the act of 1838 authorized the guaranty made by the city of Savannah upon the bonds of the railroad company, and it constitutes a valid and subsisting liability. This disposes of the only question in the case deserving serious consideration; and the judgment of the circuit court is therefore                                                    *Affirmed.*