## MERRILL *v.* TOWN OF MONTICELLO.

*(Circuit Court, D. Indiana. December 20, 1884.)*

1. MUNICIPAL BONDS—AUTHORITY OF INDIANA TOWNS TO ISSUE FOR SALE—INDIANA ACT OF 1852, § 27—REVISION OF 1881, §§ 3342–3345, 3348, 3349.
   An incorporated town in Indiana may issue bonds for sale in the market to raise money to meet at maturity a lawful indebtedness for which it has no other legal means of providing payment.

2. SAME—"FUNDING BONDS."
   That the bonds so issued purport to be "funding bonds" will not affect their validity.

On Demurrer to Reply.

*Roache & Lamme* and *Harris & Calkins,* for plaintiff.

*David Turpie* and *W. E. Uhl,* for defendant.

WOODS, J. This action is brought to recover principal and interest of 143 bonds of $100 each, with coupons attached for interest at the rate of 7 per cent. per annum. The complaint alleges the execution of the bonds by the defendant, default in the payment of the second interest coupons, and that the plaintiff had elected to treat as due the principal of each bond, and before bringing the suit had notified the defendant of this election. Copies are filed with the complaint, of a bond and one coupon, which read as follows:

EXHIBIT A. (COPY OF BOND.)

*United States of America.*

No. 1.                   STATE OF INDIANA.                 $100.

*Funding Bond of the Town of Monticello.*

Ten years after date, the town of Monticello, in the county of White, state of Indiana, promises to pay to the bearer, at the Importers' & Traders' National Bank, New York, one hundred dollars in gold, with interest thereon at the rate of seven per cent. per annum, payable annually in gold at the same place, upon presentation of the proper coupon hereto attached, without any relief whatever from the valuation or appraisement laws of the state of Indiana. The principal of this bond shall be due and payable at the option of

the holder, on the non-payment, after due presentation of any of said coupons, for ninety days after the maturity thereof.

This bond is one of a series of $21,000, authorized by the said town, by an ordinance passed by the board of trustees thereof, on the thirteenth day of May, 1878, for the purpose of funding the indebtedness of the said town.

In witness whereof, the board of trustees of the town of Monticello have caused this bond and the coupons thereof to be signed by their president and clerk, and the seal of the town to be affixed hereto, at the said town of Monticello, this twentieth day of May, 1878.          R. W. CHRISTY, President.

Attest: F. BOFINGER, Clerk.

### (COPY OF COUPON.)

The town of Monticello, Indiana, will pay the bearer, in gold coin, seven dollars, without relief from valuation or appraisement laws of the state of Indiana, at the Importers' & Traders' National Bank, New York, on the twentieth day of May, 1880, being one year's interest on Bond No. 1.

R. W. CHRISTY, President.

Attest: F. BOFINGER, Clerk.

The sixth paragraph of answer, in substance, is this:

That the defendant is, and when the bonds mentioned were issued, was, a town incorporated under the general laws of the state of Indiana, and possessed of such powers only as were conferred by law upon such bodies; that upon the twenty-fourth day of January, 1869, upon and in compliance with a petition of its school trustees, the defendant, by its board of trustees, enacted an ordinance to the effect that bonds of the town to the amount of $20,000, with coupons for interest at the rate of 10 per centum, be issued to the school trustees of the town to aid in the building of a school-house; that afterwards, on the first day of May, 1869, the town issued its bonds accordingly to the amount stated, to mature 10 years after date; that these bonds were sold, and yet remain outstanding and unpaid obligations of the town, as to the principal sum thereof, and are, and when the bonds in suit were issued, were, the only indebtedness of the town; that on the eleventh day of May, 1878, a petition was presented to the trustees of the town by the owners of taxable property therein, which petition (omitting date and the names of signers) reads as follows:

"The undersigned, citizens of the town of Monticello, Indiana, and owners of the taxable property therein, respectfully petition that you, as trustees of said town, contract a loan for said town, for the purpose of paying the indebtedness thereof, in the sum of twenty-one thousand dollars."

That afterwards, on the same day, the board of trustees entered in their record the following ordinance:

"Be it ordained by the board of trustees of the town of Monticello, Indiana, that said town issue bonds in the sum of twenty-one thousand dollars, in denominations of one hundred dollars, bearing interest at the rate of seven per centum per annum, payable in gold, to provide the means with which to pay the indebtedness of said town; and be it further ordained, that when said bonds are issued they be placed in the hands of J. C. Wilson, a member of the board of trustees, for negotiation and sale; and be it further ordained, that said bonds shall not be sold at a price less than ninety-four cents on the dollar."

That afterwards, on the twentieth day of May, 1878, there were made and issued by the board of trustees of said town the coupon bonds of the town to the amount of $21,000, each entitled "Funding Bond of the Town of Monticello," and purporting to be issued "for the purpose of funding the indebtedness of said town;" that these are the bonds and coupons sued on; that when issued they were delivered to J. C. Wilson, under the ordinance aforesaid, who negotiated and sold them upon his own account, and converted the proceeds to his own use, the town not having received any part of the proceeds. A demurrer to this answer, for want of facts, was overruled. *Merrill* v. *Town of Monticello,* 14 FED. REP. 628.

The reply, which is now in question, besides other things not deemed material to be stated here, contains allegations to the effect following:

That said Wilson negotiated and sold the bonds on June 1, 1878, in the market at par, for cash, and delivered them to the purchaser, for and on behalf of the town, and received from the purchaser for the town the price, to-wit, $21,000; that thereafter, in July, the plaintiff bought one hundred and forty-three of the bonds, being those sued on, in open market in the city of Boston, at par, and paid cash therefor, without notice of the failure of Wilson to pay the money received by him therefor to the defendant; that there was lawful authority for the issuance of the bonds, because the town was without means, and without power by tax levies or otherwise to obtain means, to pay its said indebtedness then due and about to become due.

Is this a good reply? Manifestly the case presented differs essentially from that shown by the answer, in this: The reply shows a necessity to borrow money to meet at maturity an indebtedness, for which, under existing laws, the town had no other means of providing payment. The question, therefore, is whether, under this necessity, the town had power to borrow and to give bonds for the amount of the loan. If so, it is insisted that the authority must be found in section 27 of the act of 1852, (section 3342, Revision 1881,) which reads as follows:

"No incorporated town under this act shall have power to borrow money or incur any debt or liability, unless the citizen owners of five-eighths of the taxable property of such town, as evidenced by the assessment roll of the preceding year, petition the board of trustees to contract such debt or loan. And such petition shall have attached thereto an affidavit verifying the genuineness of the signatures to the same."

In 1867, 1869, 1873, and 1875, special laws were passed defining the powers of cities and towns in Indiana to borrow money for the purchase of grounds for school-houses, and for the building of school-houses, and authorizing the issue and sale of bonds to obtain money for these purposes. The provisions of these laws, so far as yet in force, are contained in sections 3343, 3344, 3345, 4488, and 4489 of the Revision of 1881. In *Clark* v. *Noblesville,* 44 Ind. 83, it was held that section 27 of the act of 1852 was repealed by the act of March 3, 1873, (sections 4488, 4489, *supra,*) for the purposes specified in the latter act. By the same rule section 27 must be deemed to have been

repealed by the act of 1867 in respect to the subjects embraced in that act. The first section of the act of 1867 was amended by the act of 1869, and superseded by the act of 1873, whereby the maximum amount for which bonds of the kind provided for in these acts may be issued was made $50,000, instead of $30,000, which was the maximum under the act of 1867. The bonds issued by the town of Monticello in 1869 were executed under the act of 1867, as amended in 1869, and became an unquestioned indebtedness, which, when it should become due, the town was bound to prepare to pay, and for this purpose, it is conceded by counsel, the town had authority, in the manner prescribed in section 27, to borrow money. This involves the proposition, which I think true, that while debts for school property can be contracted and bonds given therefor only upon compliance with the special acts aforesaid upon that subject, yet if, by reason of the insufficiency of the tax levies authorized by those acts, it becomes necessary to borrow money for the payment of such debts or bonds, it must and may be done in the manner prescribed in section 27 of the act of 1852, which, for such purpose, is still in force. But, while conceding the power to borrow, counsel deny the validity of the bonds issued in this instance, and upon this point make the following argument:

"To borrow money is not to *fund* an indebtedness; neither does it imply, nor by necessity carry with it, a power to issue bonds for sale generally, or to sell such bonds in the market. This power is entirely different from a power to issue bonds generally for sale in the money market; and this grant of power is clearly limited by the phrase at the end of section 3342, ' to contract such debt or loan.' The implied power of the town under the express power so granted, according to the authoritative judicial decisions thereon, only went to the extent of issuing a bond to the holder of a debt against the town, or to one who had lent his money to it. But the plaintiff does not claim to have been a creditor of or lender to the town, or to have bought the bonds of one who was such creditor or lender; he claims to have bought of one to whom the bonds issued were sold. We claim that the town had no power to issue its bonds for sale generally, or to sell them to any party, under the act of 1852. It had the express power, under section 27, to contract a loan, and the implied power, hence, to issue a bond to the lender; and it had the implied power to issue new bonds, in lieu of the old ones, to the holders of the old bonds, upon such time and terms as might be agreed upon between the town and the holders of the old bonds. See *City of Galena* v. *Corwith*, 48 Ill. 423. Hence there was no imperative necessity to issue bonds generally for sale upon the market. This petition is regular in its form, and was signed by the requisite number of owners of taxable property in the town, under section 27, before cited. This was all lawful enough, and in accordance with it the board of trustees might have made an ordinance for the negotiation of a loan and the issue of the town bonds to the lenders. But the board of trustees did not do this. Instead, they passed an ordinance authorizing the issue of bonds for sale generally, and directing their sale. Now we *submit* the ordinance does not follow the petition nor the statute. The power of a municipal corporation *to issue bonds* is not, nor does it imply, a power to sell such bonds. *Gould* v. *Sterling*, 23 N. Y. 439; *Daviess Co. Ct.* v. *Howard*, 13 Bush, (Ky.) 102; *Police Jury* v. *Britton*, 15 Wall. 566. There was, when these bonds were executed, no law in Indiana authorizing towns to fund their in-

debtedness by an issue and sale of bonds for that purpose. The legislature passed such a law in 1879, after the bonds in suit were issued."

After elaborating these views, counsel conclude by saying:

"We think it well settled in Indiana that section 27 of the act of 1852, the debt-making statute of towns incorporated thereunder, is not a grant of power at all, but an inhibition of its exercise, except upon certain conditions."

And in support of this proposition they cite *Pratt* v. *Luther*, 45 Ind. 257.

We will consider this question first. In the case referred to it is said of this section that "it is subsequent to the one which defines the powers and prescribes the duties of the board of trustees, and is to be regarded as a limitation upon the powers previously granted." This view was followed in this case in the opinion upon the demurrer to the answer, and is, doubtless, true; but it by no means excludes the further proposition that, besides limiting the powers expressly granted, it raises an implication of the right to borrow, or to incur debt or liability, upon the conditions, and in the manner prescribed, incidental and auxiliary to the express powers given, to be exercised whenever necessary to the proper use of such express powers. Without such a provision, it may be doubtful whether the power to borrow would be implied as incidental to the ordinary powers of a municipality. Dill. Mun. Corp. §§ 81, 82, 407. With this provision, I think there can be no reasonable doubt of it. Indeed, this much was inferable from the decision in *Pratt* v. *Luther*, and is explicitly stated in the later case of the *Second Nat. Bank* v. *Town of Danville*, 60 Ind. 504. The question in the latter case was whether or not certain notes given by the town, upon the purchase of a fire-engine, were valid; and, after reciting the clause authorizing the purchase, and also the twenty-seventh section, the court says:

"The first of the sections of the statute authorized the town to purchase an engine for cash. The second gave the town power, on the proper petition, to contract a debt in two modes: one by purchasing an engine on credit, and the other to create a debt by way of a loan, to raise the money to pay for it on its purchase."

And the court held that the notes of the town, "commercial or otherwise," were lawfully made. See, also, *Clark* v. *Town of Noblesville, supra; Miller* v. *Board Com'rs*, 66 Ind. 162, 166, 167; *Thompson* v. *City of Peru*, 29 Ind. 305; *City of Galena* v. *Corwith, supra; Com.* v. *Pittsburgh*, 41 Pa. St. 278. While not, therefore, in itself a substantive grant of power, this twenty-seventh section of the statute clearly evinces the legislative understanding and intent that the right to borrow, or otherwise contract debt or liability, might be employed as incidental to the express powers given in that or any subsequent act containing no inconsistent provision. And this, as it seems to me, includes a case where the power is necessary, in order to prevent default in the payment of obligations incurred under explicit authority, for the liquidation of which no other sufficient or exclusive

v.22f,no.10—38

provision has been made. It is not to be inferred from this that "the financial necessity of the town can'operate to enlarge its powers," but only that such necessity may afford the requisite occasion for their exercise. While the special acts of 1867 and 1869 required levies of special taxes for payment of principal and interest of the bonds thereby authorized, not exceeding 50 cents on any $100 of taxable property, and one dollar on each poll, they contain no restriction of the municipal liability on such bonds to the special provision so made; and consequently, when, as in this case, that provision proved inadequate, the town was liable generally for the deficiency, (*U. S.* v. *County of Clark,* 96 U. S. 211, *Kimball* v. *Board Com'rs,* 21 FED. REP. 145,) and had the right to resort to its power to borrow.

Having concluded that under the circumstances the town had the right to borrow, we come to the question whether or not the bonds in suit were issued in the lawful exercise of that power. The argument for the defense, as we have seen, turns upon the supposed difference between a power to issue bonds to a lender and a power to issue them for sale in the market. It is conceded, for the purpose of the argument, at least, that the power to borrow existed, and that from that an implied power arose to issue negotiable securities to the lender; but it is insisted that this differs essentially from a right to put the bonds of the town upon the market for sale. If there be a difference legally, in what does it consist? When a town would borrow money, how shall it find the lender? Manifestly, from the power to borrow and the implied power to give the ordinary forms of obligation arises the further implication of right to seek the lender; and in the absence of restriction in that respect, to seek him in whatever reasonable manner and place he may be found, whether in the banks, on the boards of trade, or elsewhere. And since, in any case, the town must act by an agent, I see no reason, except of policy not affecting the question of power, why it may not send its agent with bonds duly prepared for delivery to be disposed of to any, who, upon the prescribed terms, will take them. In common parlance, and sometimes in the language of legislative enactment, this is called a *sale;* but it is a misnomer. It is an issue or execution of the bond, and the purchaser (so called) is a lender in fact, since, strictly speaking, a person, or corporation, cannot sell his own obligation. Until delivered to the other party, it is not an obligation, and only when delivered, whether to the highest bidder in open market or to the taker found in any other way and place, does it become effective and binding; and he who receives it and pays, or rather surrenders, his money for it, is a lender, not distinguishable legally from one who takes a bond payable to him in his proper name. Wherefore, as it seems to me, the alleged distinction between the conceded power and the power exercised is not substantial; neither is it justified by the cases cited in support of it.

In *Gould* v. *Sterling* it was held that a town, empowered to borrow

money to aid in the construction of a railroad, could not issue its bonds directly to the railroad company; and while the reason given for this ruling seems to me convincing, it is not applicable here. The contrary, however, is decided in *Rogers* v. *Burlington*, 3 Wall. 654; *Town of Venice* v. *Murdock*, 92 U. S. 494; *City of Savannah* v. *Kelly*, 108 U. S. 184; S. C. 2 Sup. Ct. Rep. 468; *Evansville, etc., R. Co.* v. *City of Evansville*, 15 Ind. 395, and *Second Nat. Bank* v. *Town of Danville, supra.* In *Police Jury* v. *Britton*, it was held that a municipality, possessed of "the power of levying taxes to defray the necessary expenditures of the jurisdiction," has no implied authority to issue negotiable securities for the purpose of raising money or funding a previous debt. The case concedes the right to give such obligations as incidental to the power to borrow, when that exists. In *Daviess Co.* v. *Howard* occurs the *dictum* that "the power to issue the bonds does not imply the power to sell;" but this was said in respect to a power given a county to subscribe to the stock of a railroad company, and "to issue the bonds of the county for the amount of the stock subscribed, or any part thereof." The point decided was that under this power the bonds could not be issued to the railroad company at less than par value nor sold at a discount for the purpose of obtaining money to be paid to the company upon the county's subscription to the stock. Neither explicitly nor by implication is it said or held that the power to issue bonds does not imply the power to sell or negotiate them in the sense now under consideration. The supreme court of Indiana, however, has spoken on the subject: once directly, and oftener by implication. In *Thompson* v. *City of Peru, supra*, concerning the power to borrow, the court said: "The issuing and sale of bonds in the market is the most usual and ordinary method adopted by corporations to borrow money." And, to the same effect, see *Evansville, etc., R. Co.* v. *City of Evansville*, and other cases already cited.

The remaining inquiry is whether the bonds in suit are invalid because they purport to be funding bonds. The petition and ordinance pursuant to which they were issued say nothing of funding, and in terms embrace only the purpose of obtaining money to pay the town's indebtedness; and consequently the legend, "Funding Bond," and the recital of the purpose to fund the debt, as I suppose, can be regarded, in any view, as nothing more than mistakes, in no way affecting the nature of the transaction nor of the securities, except, as was held in the opinion on the demurrer to the answer, to put the purchaser on inquiry. But since, upon the averments of the reply, we hold that the bonds were lawfully issued, and as a consequence must hold that the town is bound by the acts of its duly-appointed agent, notwithstanding his failure to account for the moneys which he received, it is no longer material to consider whether or not the paper is negotiable by the law merchant, and the plaintiff a *bona fide* holder. Granting, however, if necessary, that these bonds, in a sense, must

be regarded as funding bonds, I am of opinion that their issue was not unlawful on that account. To fund is "to put into the form of bonds or stocks bearing regular interest," and "to provide and appropriate a fund or permanent revenue for the payment of the interest." Webst. Dict.; Bouv. Law Dict. By the same authority, a "funding system" is "a plan which provides that on the creation of a public loan funds shall immediately be *formed* and secured by law for the payment of the interest, and also for the gradual redemption of the capital itself." If the bonds in question come within these definitions, they come equally within the scope of section 27, which declares that "for any debt contracted thereby the trustees shall add to the tax duplicate of each year, successively, a levy sufficient to pay the accrued interest on such debt or loan, with an addition of not less than five cents on the hundred dollars, to create a sinking fund for the liquidation of the principal thereof." Instead, therefore, of the acts of 1879 and 1881 being the first to confer funding powers upon towns, those acts, while in some respects bestowing new power, in other respects constitute restrictions upon power already existing under section 27 of the law of 1852. I do not mean, of course, that section 27 contains or carries an implication of power to execute a general funding scheme, embracing a variety of debts, whether floating or bonded, due or not due, such as is expressly conferred in the act of March 7, 1881, but manifestly any debt incurred under the restrictions of that section must be a funded debt, whether so called or not, and bonds issued therefor, if subject to no other vice, cannot reasonably be deemed invalid merely because they purport to be funding bonds.

Demurrer overruled.