### PORTLAND SAVINGS BANK *v.* CITY OF EVANSVILLE.

*(Circuit Court, D. Indiana. November 2, 1885.)*

1. MUNICIPAL BONDS—CHARTER OF EVANSVILLE, INDIANA—RENEWAL OR RE-DEMPTION BONDS.

The city of Evansville, Indiana, besides the usual municipal powers, has power "to borrow money for the use of the city," and this includes the right to issue bonds in renewal or redemption of bonds issued for lawful purposes.

2. SAME—RECITAL.

The purchaser of municipal bonds which purport to have been issued for a lawful purpose may rely on the recital, and is not bound to inquire whether there had been a diversion from that purpose, though it be shown by the municipal records.

Demurrer to Answer.

*Baker, Hord & Hendricks,* for plaintiff.

*McDonald, Butler & Mason* and *J. B. Rucker,* for defendant.

WOODS, J. This is an action upon interest coupons from six series of negotiable bonds made by the city of Evansville, Indiana. The plaintiff is shown to have purchased the coupons in good faith before they were due. Each series consisted of bonds for $1,000 each, and the bonds and coupons were all made payable to the bearer at the office of the Farmers' Loan & Trust Company in the city of New York; and, taken in the order in which they are described in the complaint, the different series are for the amounts and contain the recitals following, to-wit: *First.* Bonds dated May 1, 1869, and denominated "Evansville City Bonds," for $100,000, "to be sold to repay recent expenditures in construction and paving of the Evansville City wharf, the annual revenues of which are irrevocably pledged by the common council to the payment of interest and principal of the bonds as they mature." *Second.* "Redemption Bonds" for $300,000, dated April 1, 1876, and "issued by virtue of a resolution of the common council of said city, adopted on the fourteenth day of December, 1875, under and by virtue of the power delegated to said city by section 30 of an act of the general assembly of the state of Indiana incorporating said city, approved January 27, 1847, for the purpose of redeeming $300,000 local improvement bonds." *Third.* "Redemption Bonds" for $105,000, dated May 15, 1876, and "issued by virtue of a resolu-

tion of the common council adopted on the seventeenth day of April, 1876, under and by virtue of the power delegated to said city by section 30 of an act," etc., (the act of January. 27, 1847, *supra*,) "for the purpose of redeeming $105,000 of the bonds of said city." *Fourth.* "Redemption Bonds" for $100,000, dated June 1, 1877, "issued by virtue of a resolution of the common council, adopted on the sixth day of April, 1877, under and by virtue of section 30," etc., (act of January 27, 1847, *supra*,) "for the purpose of redeeming $100,000 bonds of said city." *Fifth.* "Redemption Bonds" for $100,000, dated April 15, 1878, and "issued by virtue of a resolution of the common council, adopted on the twenty-fifth day of March, 1878, under and by virtue of the power delegated to said city by section 30," etc., (act of 1847, *supra*,) "for the purpose of redeeming $100,000 bonds of said city." *Sixth.* "Redemption Bonds" for $100,000, dated February 1, 1881, "issued by virtue of a resolution of the city council of said city, adopted on the twenty-fourth day of January, 1881, in pursuance of the power delegated to said city by its charter, * * * to redeem a similar amount of said city's bonds now outstanding."

A detailed statement of the several answers need not be given. The statutory provisions pertinent to the questions presented are contained in section 30 of the act of January 27, 1847, referred to in the bonds, and are as follows:

"Sec. 30. The common council shall have the control and management of the finances, and of all the property, real and personal, belonging to said city, and shall have full power and authority for and within said city to make, establish, alter, modify, amend, and repeal by-laws, ordinances, rules, and regulations, for the following purposes and on the following subjects: * * * *Fortieth.* To take stock in any chartered company for making roads to said city: provided, that in all cases where such stock is taken the common council shall have power to borrow money, and levy and collect a tax on all real estate, (either inclusive or exclusive of improvements, at their discretion,) for the payment of said stock. *Forty-first.* To borrow money for the use of the city of Evansville. *Forty-second.* To lay out, open, and make new streets and alleys, highways and wharfs, etc. * * * *Forty-fourth.* To regulate all wharfs on the Ohio river, and the amount of wharfage to be charged for the use of the same. *Forty-fifth.* To levy and collect a revenue for the use of the city, in the manner hereinafter prescribed."

In respect to the series of bonds first named there can be no doubt, and, indeed, no question seems to be made, of the authority of Evansville under its charter to execute them. The right to construct wharves and the power to borrow money carry with them the right to make the bonds, because that is the ordinary method adopted by corporations to borrow money. *Thompson* v. *Peru* and other cases, *infra.*

It is alleged, however, that these bonds were delivered to the Merchants' National Bank of Evansville for 75 cents on the dollar of their par value, in exchange for bonds of the city theretofore issued in aid of the construction of the Evansville, Henderson & Nashville Railroad, the line of which did not run through, to, or into said city,

and that all these facts were fully and plainly shown upon the public records of the proceedings of the common council prior to the delivery and exchange of bonds as stated.

Deciding nothing now in respect to the validity of the Evansville, Henderson & Nashville aid bonds, or the right of the city to make the alleged exchange of bonds, I do not think this a good defense. The purchaser of the coupons had a right to rely upon the truth of the recital in the bonds in respect to the purpose for which they were made, and was not bound to inquire whether or not there had been a diversion from that purpose, nor to take notice of what the records of the common council show in that respect.

It is alleged in one of the answers that the plaintiff had made no demand for the payment of these coupons out of moneys derived from the wharf revenues, which were pledged for their payment. Such a demand was not necessary; the promise of the city to pay the bonds and coupons is absolute, and is in no degree limited or modified by the pledge of a special fund. *U. S.* v. *County of Clark,* 96 U. S. 211; *Kimball* v. *Board of Com'rs,* 21 Fed. Rep. 145.

The defense sought to be made against the other coupons in suit depends mainly upon the proposition of counsel that, without explicit authority in its charter, a municipal corporation cannot lawfully make redemption or refunding bonds such as these all purport to be.

In support of this proposition, besides authorities cited upon minor points, counsel have referred to the following cases: *Merrill* v. *Monticello,* 14 Fed. Rep. 628; *Port Huron* v. *McCall,* 46 Mich. 570; S. C. 10 N. W. Rep. 23; *Police Jury* v. *Britton,* 15 Wall. 566; *County of Jasper* v. *Ballou,* 103 U. S. 745; *Louisiana* v. *Wood,* 102 U. S. 294; *Ogden* v. *County of Daviess,* Id. 634; *County of Hardin* v. *McFarlan,* 82 Ill. 138; *People* v. *Lippincott,* 81 Ill. 193; *East St. Louis* v. *Maxwell,* 99 Ill. 439.

Counsel for plaintiff have cited, *contra, City of Galena* v. *Corwith,* 48 Ill. 423; *City of Richmond* v. *McGirr,* 78 Ind. 192; *Merrill* v. *Monticello,* 22 Fed. Rep. 589; *Insurance Co.* v. *Robinson,* 25 Ind. 537; *Thompson* v. *Peru,* 29 Ind. 305; *Daily* v. *Columbus,* 49 Ind. 169; *Second Nat. Bank* v. *Danville,* 60 Ind. 504; *Miller* v. *Board of Com'rs,* 66 Ind. 166; *Com.* v. *Pittsburgh,* 41 Pa. St. 278; *Seybert* v. *Pittsburg,* 1 Wall. 272; *Rogers* v. *Burlington,* 3 Wall. 654; *City of Savannah* v. *Kelly,* 108 U. S. 184; S. C. 2 Sup. Ct. Rep. 468; *Portsmouth Savings Bank* v. *City of Springfield,* 4 Fed. Rep. 276.

An analysis or review of cases, here, would not be useful. The force of the argument made against the validity of these bonds consists largely, as it seems to me, in the assumption that a redemption bond requires the same authority for its execution as a funding bond. For reasons which are indicated in *Merrill* v. *Monticello,* 22 Fed. Rep. 589, there seems to me to be a manifest distinction. It may be conceded, though it by no means appears to be well settled either upon authority or principle, that an express and unrestricted power, such

as was given to Evansville, to borrow money for municipal uses does not include authority to enter upon a general funding scheme, and to provide the sinking fund implied in such a scheme.    But, this concession made, it involves no inconsistency to say that such a grant of power embraces, not by implication, but by force of the expression, the right of the city, whenever the common council shall deem it necessary or advantageous, to execute new obligations in renewal or redemption of old ones, or in order to obtain money to pay the old ones, if due; or even before their maturity, if thereby a reduced rate of interest or other benefit can be obtained.    To do so would clearly be for the use of the municipality; and, indeed, without this power it is impossible that the right to borrow can be employed to the best advantage. Instead of there being two distinct municipal powers involved here, as the argument for the defense constantly assumes, there is but one; and the city of Evansville has it, not by implication, but by direct and full expression in the words of its charter: "To borrow money for the use of the city."    The language of Judge DRUMMOND, in *Portsmouth Sav. Bank* v. *Springfield, supra*, is pertinent, where he said:

"It being once admitted that the city authorities had the power to issue these bonds, that undoubtedly carried with it the authority to renew the bonds, or to take them up and supply their place with other bonds; and I do not think it can be expected that those who took bonds under such circumstances —that is, reissued bonds—can be required to look into all the details connected with the manner in which the old bonds had been taken up and the new ones issued."

There can be no essential difference, manifestly, between the reissued bonds here spoken of and the redemption bonds under consideration.    It follows that the name put upon these bonds, and the recitals in them, instead of showing reasons for discredit, constituted an assurance to the purchaser that they were issued for a lawful purpose.

Again, legislative construction is appealed to.    Counsel for the city say:

"The fact that the legislature of Indiana has passed four different laws conferring upon cities the power to issue redemption and refunding bonds shows clearly that they did not possess the power before."

The number of these acts perhaps detracts from the force of the argument.    The very first of them, like those which follow, contains restrictions in respect to the rate of interest which the funded debt shall bear, and in respect to other particulars; and, as was suggested in *Merrill* v. *Monticello, supra*, the inference is not unfair that these enactments were all intended to define rather than to declare the power to refund.    The purpose may have been to put the power beyond doubt, as well as to prescribe its limits.

The further suggestion is made that Evansville had ample taxing powers, and consequently was under no necessity to resort to an issue of this kind of securities.    But while an adequate power of tax-

ation may, under supposable circumstances, be enough to forbid an implication of power to borrow, it affords no reason for putting a narrow or more restricted construction upon an express grant like the one under consideration. The powers both to tax and to borrow being granted, it is a question of policy, to be decided by the common council, whether, in any instance, resort shall be had to one or the other or both; and if a loan upon negotiable securities is made, the good-faith lender, or purchaser of the bonds, is protected accordingly.

It is also alleged that the bonds called "Redemption Bonds" were issued and used for the purpose of paying debts of different kinds, some of which were a charge upon real estate only, and others upon all taxable property within the city. This fact does not seem to touch the question of power to make the bonds or of the rights of holders. It presents a matter of administration merely, in respect to which good book-keeping only is necessary to protection of all interests; and, in case of any failure or misconduct of officials, the remedy could be had in the courts.

In some of the answers certain inconsistencies are alleged between the dates of bonds and the dates required by the resolutions of the common council, by authority of which the bonds were issued. But these and the like irregularities cannot affect the rights of innocent purchasers, especially as it appears in the complaint that the city paid interest upon the bonds for years, without question of their validity. See *Portsmouth Savings Bank* v. *Springfield, supra.*

The question of usury, under the law of New York, if otherwise in the case, is not available to a corporation. Diossy, St. N. Y. 1881, p. 243, § 18; *Butterworth* v. *O'Brien*, 23 N. Y. 275; *Belmont Branch Bank* v. *Hoge*, 35 N. Y. 65.

These conclusions make it unnecessary to consider other questions discussed, and especially those in respect to the validity and effect of later legislation upon the charter of Evansville. Demurrer sustained to each paragraph of answer.