THE CITY OF PORT HURON v. ALBERT McCALL.

*Municipal power to issue refunding bonds—Repudiation of debt.*

Under the provision in the charter of Port Huron which empowers the common council to "issue new bonds for the refunding of bonds and evidences of indebtedness already issued," the common council may issue new bonds to raise money for the satisfaction of judgments.

Municipal powers are to be construed strictly ; but the reason for strictness has little application when they are of a nature to concern no one but the people of the municipality; as for example, when they relate merely to a change in the form of municipal indebtedness. The question in such a case is, what was probably the legislative intent in granting a power.

If a city has obtained money on a particular construction of a power, and then adopts a different construction to avoid payment, it is proper to give some weight to the first construction, if the question is one of doubt.

Error to St. Clair. Submitted April 7. Decided Oct. 12.

ASSUMPSIT. Defendant brings error. Affirmed.

*Chas. K. Dodge* and *A. E. Chadwick* for plaintiff in error. Municipal bonds issued under act 266 of 1865 were void: *Thomas v. Port Huron* 27 Mich. 320 ; so were municipal bonds issued under act 45 of 1869 : *Bay City v. State Treasurer* 23 Mich. 499 ; the municipal powers of taxation, borrowing money, contracting debts and loaning credits are absolutely limited upon the words of grant and permission

in the charter: *Thomas v. Railroad Company* 101 U. S. 82; *Bank of Augusta v. Earle* 13 Pet. 587; a corporation created by statue derives all its powers from the statute and can only exercise them in the mode therein prescribed: *Fertilizing Co. v. Hyde Park* 97 U. S. 666; corporate powers can never be created by implication or extended by construction: *Penn. R. R. v. Canal Com'rs* 21 Penn. St. 22; *Moran v. Miami County* 2 Black 723; *Minturn v. Larue* 23 How. 435; *Beach v. Fulton Bank* 3 Wend. 583; *Zottman v. San Francisco* 20 Cal. 102; *Brady v. New York* 2 Bosw. 173: 1 Dill. Mun. Corp. §§ 55, 108; 2 id. § 605; Cooley Const. Lim. 195; Cooley on Taxation 209; *Marsh v. Fulton County* 10 Wal. 683; *Reg. v. Lichfield* 4 Ad. & El. (N. S.) 908; a person dealing with an agent exercising delegated powers in giving him paper, must see at his peril that the paper falls within the power: *Floyd Acceptances* 7 Wal. 676; the power to issue bills for certain purposes excludes the power to issue them for other purposes: *Thomas v. Richmond* 12 Wal. 351; and paper so issued may be held void if it does not cover all the purposes designated: *Police Jury v. Britton* 15 Wal. 566; or if it exceeds the constitutional limit of indebtedness: *Buchanan v. Litchfield* 102 U. S. 279; a corporation cannot ratify an act it could not have done: *Highway Com'rs v. Van Dusan* 40 Mich. 431; general acts cannot by implication repeal charters: 1 Dill. Mun. Corp. 54; *Bond v. Hiestand* 20 La. Ann. 139: *Hammond v. Haines* 25 Md. 541; *Cumberland v. Magruder* 34 Md. 381; *Ottawa v. County* 12 Ill. 339; *Egypt Street* 2 Grant's Cas. 455; *State v. Branin* 3 Zab. 484; general legislation must give way to inconsistent special legislation on the same subject: *State v. Clarke* 1 Dutch. 54; *State v. Jersey City* 5 Dutch. 170; *Jersey City v. Railroad Co.* 20 N. J. Eq. 360;

*Geo. V. N. Lothrop* for defendant in error. The railroad aid law conferred a special and exceptional power to be exercised largely outside of charter methods: *Davison v. Otis* 24 Mich. 26; a corporation cannot by representations or by silence involve others in onerous engagements and then defeat the claims that have arisen in consequence: *Bissell v.*

*Jeffersonville* 24 How. 300; powers expressly granted or necessarily implied are not to be defeated or impaired by stringent construction: *Kyle v. Malin* 8 Ind. 37; *United States v. Freeman* 3 How. 564; *Parsons v. Wayne Circuit Judge* 37 Mich. 290; *Beecher v. Marq. & Pac. R. Mill* 45 Mich. 103; to prevent injustice by a technical merger a judgment is to be regarded as not strictly a new debt but an old debt in a new form: *Clark v. Rowling* 3 N. Y. 220; where a municipality, in acting upon its own construction of its charter powers, has issued obligations and induced *bona fide* purchasers to take them, it will be bound by its own action: *Van Hostrup v. Madison* 1 Wall. 297; *Meyer v. Muscatine* id. 385; long practical construction is to be regarded in ascertaining the force of a statute: *Sherwin v. Bugbee* 16 Vt. 444; *Portsmouth Savings Bank v. Springfield* 4 Fed. Rep. 276; *People v. May* 3 Mich. 606; *Johnson v. Ballou* 28 Mich. 384; where a corporation has power, under any circumstances, to issue negotiable securities, the *bona fide* holder has a right to presume that they were issued under the circumstances which give the requisite authority; and they are no more liable to be impeached for any infirmity in the hands of such a holder than any other commercial paper: *Gelpcke v. City of Dubuque* 1 Wall. 203; *Meyer v. Muscatine* 1 Wall. 384; *Supervisors v. Schenck* 5 Wall. 784; *Lexington v. Butler* 14 Wall. 296; *Mercer County v. Hacket* 1 Wall. 83; *Hackett v. Ottawa* 99 U. S. 95; *Pompton v. Cooper Union* 101 U. S. 204; the reception and retention in the city treasury of the purchase price of the bonds, its use for municipal benefit, and the repeated payment of interest on the bonds, estop the city from a defence founded on irregularities in the exercise of a granted power: *Pendleton v. Amy* 13 Wall. 297; *County of Henry v. Nicolay* 95 U. S. 626; *Rogers v. Burlington* 3 Wall. 667; *County of Randolph v. Post* 93 U. S. 514; *County of Ray v. Vansycle* 96 U. S. 687; *County of Daviess v. Huidekoper* 98 U. S. 102; this would not apply where there was no power at all to issue bonds: *Loan Association v. Topeka* 20 Wall. 655; where the power exists an issue in excess of the amount

limited by law does not impair bonds in the hands of a *bona fide* holder; *Marcy v. Oswego* 92 U. S. 637; *Wilson v. Salamanca* 99 U. S. 499; *Walnut v. Wade* 13 Chicago Legal News, 286; nor does the failure to register bonds as required, or variations in rate of interest and time of maturity: *Rock Creek v. Strong* 96 U. S. 271; or issue in a lump sum of bonds authorized for buying depot grounds: *Converse v. Scott* 92 U. S. 503; or an erroneous reference to the statute giving authority: *Commissioners v. January* 94 U. S. 206; the municipality may be liable though bonds dated while a certain person was clerk, were not actually signed by him till after his term of office had expired: *Weyauwega v. Ayliny* 99 U. S. 112; and generally when there is power to issue bonds, irregularities or misconduct on the part of town officers do not impair the bonds in the hands of *bona fide* holders: *East Lincoln v. Davenport* 94 U. S. 801; when a power to issue bonds is given to a municipality, subject to some condition precedent, the existence of which is to be determined by those who are to issue the bonds, a recital in the bonds that the condition exists is conclusive in favor of a *bona fide* holder of the bonds: *Commissioners v. Aspinwall* 21 How. 544; *Bissell v. Jeffersonville* 24 How. 287; *Moran v. Commissioners* 2 Black 722; *Lynde v. County* 16 Wall. 13; *Coloma v. Eaves* 92 U. S. 484; *Venice v. Murdock* 92 U. S. 494; *Humboldt v. Long* 92 U. S. 642; *Leavenworth v. Barnes* 94 U. S. 70; *Commissioners v. Bolles* 94 U. S. 104; *Commissioners v. Clark* 94 U. S. 287; *San Antonio v. Mehaffy* 96 U. S. 312; *County of Warren v. Marcy* 97 U. S. 96; *Block v. Commissioners* 99 U. S. 694; *Commissioners v. Nichols* 14 Ohio St. 260; *Soc. for Savings v. N. London* 29 Conn. 174; *Railroad Co. v. Evansville* 15 Ind. 395; where a city had issued paper like bank notes which for that reason were of doubtful validity, and afterward issued bonds to take it up under a power to issue bonds to extend such indebtedness as it was unable to meet at maturity, the bonds were held valid: *Little Rock v. National Bank* 98 U. S. 308; nec enim ulla res vehementius rempublicam con-

tinet quam fides; quae esse nulla potest nisi erit necessaria solutio rerum creditarum: *Cicero de Officiis* l. ii, c. xxxiv.

COOLEY, J. To an understanding of this case a brief summary of the facts is essential.

Under certain legislative acts purporting to empower the city of Port Huron to grant municipal aid to the Port Huron & Lake Michigan Railroad, the city subscribed a large sum to the stock of the company engaged in building that road, and issued bonds for the amount of the subscription. These bonds were negotiable, and soon passed from the railroad company into the hands of purchasers.

Subsequently to these issues, in the case of *People v. Township Board of Salem* 20 Mich. 452, this court decided that it was incompetent under the Constitution of the State to pass acts empowering municipalities to grant aid to railroads. Notwithstanding that decision the municipalities which had issued bonds in conformity with the invalid legislation, generally recognized their obligation to provide payment, and proceeded to do so without dissent on the part of their people. In some cases suits were brought in the federal courts and recovery had. In some other cases suits were brought in the State courts and judgments allowed to pass by default or on confession. In Port Huron the controlling sentiment seems to have favored the payment, without question, of the bonds the city had issued, and some of them were put into judgment in State and federal courts without contest. In January, 1875, the city attorney was instructed by a vote of the common council to confess judgment in all suits brought upon the bonds.

I think we are agreed that the question of the original validity of the bonds which have been put in judgment is now wholly unimportant. The good faith of the city authorities in suffering the judgments to be taken is not impugned, and they stand unquestioned. We are, therefore, excused from any discussion of some of the points made.

The charter of the city was revised in the year 1869. One section of the revision is as follows: "No loan, bond, or other

evidence of debt not expressly authorized by this act, or by any act hereby continued in force, shall be made or issued by the common council or any officer of the corporation; provided, however, that the common council may issue new bonds for the refunding of bonds and evidences of debt already issued, and the proper officer of the corporation may draw and issue orders on the treasury for the necessary and current expenses of the city." Laws of 1869, vol. 3, p. 1554.

Under the assumed authority of this provision of the charter, the common council in October, 1874, voted to sell eight per cent. bonds, at a price not below par, for the payment of judgments on railroad aid bonds, and proposals for the bonds were invited by public notices. In the following month the interest offered was increased to ten per cent., and proposals were then received and bonds issued from time to time to the amount in all of $80,000 and upwards. The money received for these bonds was paid into the city treasury, and was used to satisfy judgments rendered upon the railroad aid bonds.

The charter of the city was again revised in 1877, and the following are the provisions which bear upon the issue of bonds:

"The common council shall with the approval of the board of estimates also have power to provide money for the water fund, the sewer fund, the school building fund, the public building fund, and the bridge fund, by borrowing upon the faith and credit of said city, and upon the best terms that can be made, such sums of money as shall be deemed necessary and expedient, and to issue the bonds of the city therefor, but said bonds shall not be negotiated at less than their par value or bear interest to exceed seven per centum.    *    *    *

"Bonds issued under the preceding section shall be respectively denominated 'water bonds of the city of Port Huron,' 'sewer bonds of the city of Port Huron,' 'school building bonds of the city of Port Huron,' 'public building bonds of the city of Port Huron,' and 'bridge bonds of the city of Port Huron,' and shall be regularly dated and numbered in the order of their issue, shall be for sums not less than one hundred dollars each, and shall be payable in not less than ten or more than thirty years from date;

shall be issued under the seal of the corporation, signed by the mayor and clerk, and countersigned by the controller. The controller shall keep an accurate record of said bonds, and of the class of indebtedness to which they belong, the number, date, and amount of each bond, its rate of interest, when and where the same is payable, and the person to whom it is issued. The proceeds of said bonds shall be paid into the city treasury and be credited to the funds for which the bonds were issued, and be applied exclusively to the purposes for which said funds are constituted by this act.

"No loan, bond, or other evidence of debt not expressly authorized by this act or any act hereby continued in force, shall be made or issued by the common council or any board or officer of the corporation: provided, however, That the common council, subject to the approval of the board of estimates, may issue new bonds for the refunding of bonds and evidences of indebtedness already issued, subject to all the limitations and regulations contained in the two preceding sections: And provided further, That the controller may draw and issue orders on the treasurer for the necessary and current expenses of the city and of the several boards, as the same may be allowed by the common council." Local Acts 1877, pp. 229–230.

It was after this revision that the bond whose validity is questioned in this suit was issued. It was issued as a refunding bond, and the proceeds applied to the satisfaction of judgments rendered upon railroad aid bonds previously outstanding.

It is insisted that the charter as thus revised does not authorize the issue of refunding bonds for the railroad aid indebtedness, but that on the contrary the issue of new bonds is restricted to the refunding of those issued for the several purposes which are here specified. The new bonds, it is said, are to be issued, "subject to all the limitations and regulations contained in the two preceding sections;" and those sections name four classes of bonds, not including the railroad aid bonds, and require the moneys raised on each class of bonds to be credited to the fund for which the bonds were issued, and to be applied exclusively to the purposes for which such fund is constituted.

This argument is sound if the view is correct which is taken of the third section above quoted, that it restricts the

power of refunding to the bonds before particularly specified. But in terms it contains no such restriction: the words are as general as possible, and cover "bonds and evidences of indebtedness" without limitation. If there were nothing further in the section, it would seem clear that the intent was to confer an unrestricted power. But the power is restricted in this: that the refunding bonds must be issued "subject to all the limitations and regulations contained in the two preceding sections." What are these? It seems to me there should be no question on this point. The bonds must not be sold below par; they must not bear more than seven per cent. interest; they must be payable in not less than ten nor more than thirty years; and then there are further directions to ensure an orderly issue and a perfect record. These are limitations and regulations proper to be imposed on the issue of any bonds, and they were wisely imposed here. But if the purpose was to restrict the issue of refunding bonds to the indebtedness pertaining to the particular funds named, it is reasonable to conclude that this would have been done in terms. The language granting power to refund is general, and the restraining proviso is fully satisfied by applying it to the particulars which have been specified. There is no apparent reason for extending it by construction, and no reason is suggested for supposing the Legislature intended to preclude the city from refunding its aid bonds. The legislative sentiment was not adverse to their payment. On the contrary there was then in existence a legislative act passed two years previously expressly empowering the several municipalities to levy taxes for the payment of railroad aid bonds previously issued by them, and the legislative intent that they should be paid was unquestionable. We should naturally expect, therefore, that any legislation for the refunding of existing indebtedness would be sufficiently general to include such bonds: and when we discover that which is apparently general, we are not invited by the circumstances to any narrow interpretation on the supposition that such was the legislative intent. All apparent reasons point in the opposite direction.

But it is also said that refunding bonds may be issued only for the refunding of "bonds and evidences of indebtedness already issued;" and a judgment is not an evidence of indebtedness issued. A judgment is the act of a court; but the refunding provision intends the obligations which the city itself has issued as evidence of its indebtedness, the bonds, notes, etc., and this view is strengthened by the following section—§ 12, p. 231—which provides that "All bonds and evidences of debt, when refunded, shall be cancelled and destroyed by the treasurer in the presence of the controller and a special committee of the common council appointed for that purpose. He shall record and keep an accurate description of all bonds and evidences of debt thus cancelled and destroyed." A judgment, it is said, cannot be thus cancelled and destroyed.

This view of the statute is an after-thought on the part of the city authorities. It seems never to have occurred to them until after the refunding bonds had been issued and sold, and judgments paid from the proceeds. The point is now made, when its effect, if sustained, is to defeat obligations for which full value has been given, after the city has appropriated the avails. It is to be assumed that the city officers when they paid the judgments, found some method of cancelling and destroying them. The point is therefore absolutely without equity, and is entitled to such consideration only as a just construction of the statue will compel us to give it.

This view of the statute is also very narrow and technical. It comes from a strict and narrow interpretation of words, such as persons are accustomed to resort to when they would assign plausible reasons for circumventing a statute without expressly antagonizing it. It is easy to say that a judgment is not an evidence of indebtedness issued; but it is just as easy to say the contrary, and with quite as good reason. A judgment is not only an evidence of indebtedness, but it is of the highest and most conclusive nature. And there is no straining of language in saying that the judgment is issued. The word is not the most appropriate, but we know

that persons who are not critical in the use of language
·sometimes speak of a court having issued its judgment.
And what difficulty there can be in cancelling and destroy-
ing a judgment I do not understand. The utterance of the
judge pronouncing it cannot be destroyed; the book in
which it is entered is to be preserved as a perpetual
record; but the judgment as an evidence of indebted-
ness is cancelled when it is paid and receipted, and if the
·discharge is entered upon the record, as is customary, it is
·an effectual destruction. If the treasurer cannot do this in
person, he can cause it to be done. The statute does not
indicate any particular method of destruction : the method
must be suited to the case.

It is not very agreeable for a court to be thus invited to
a critical examination of words to defeat an obligation
which has been issued and paid for under an opposite
interpretation. The case under such circumstances ought to
be too clear for doubt or question; it ought to be so plain
that at first blush we feel compelled to say that the parties
receiving the obligation ought to have known it was issued
without authority and in fraud of the law, and are therefore
fairly chargeable with fault in receiving it. If the true
·construction of the law is in doubt, the city ought to be
held to the view its own authorities took of it when borrow-
ing money under it, especially as nothing was involved in
the original action but the mere change in the form of a
·city debt.

There is a principle of law that municipal powers are to
be strictly interpreted; and it is a just and wise rule.
Municipalities are to take nothing from the general sover-
·eignty except what is expressly granted. But when a
power is conferred which in its exercise concerns only the
municipality, and can wrong or injure no one, there is not
the slightest reason for any strict or literal interpretation
with a view to narrowing its construction. If the parties
·concerned have adopted a particular construction not mani-
festly erroneous, and which wrongs no one, and the State is
·in no manner concerned, the construction ought to stand.

That is good sense, and it is the application of correct principles in municipal affairs.

It is worthy of note as having possible bearing on the legislative intent, that the alternative to issuing refunding bonds must have been the levy of taxes to make immediate payment of the judgments; and this must have operated oppressively and perhaps brought disaster upon the city.

I think the judgment should be affirmed.

MARSTON, C. J. and CAMPBELL, J. concurred.

GRAVES, J. I concur in the result.