CHARLES A. STONE

*v.*

THE CITY OF CHICAGO *et al.*

*Opinion filed February 17, 1904.*

1. MUNICIPAL CORPORATIONS—*power of cities to issue twenty-year bonds.* A city organized under the general law has power to issue twenty-year bonds to obtain funds for corporate purposes and with which to raise money to retire outstanding bonds issued by the city, or other indebtedness due from it, notwithstanding the provisions of section 3 of article 7 of the City and Village act, concerning the power to make temporary loans.

2. SAME—*issuing of bonds to pay judgment indebtedness is pledging credit for a corporate purpose.* Issuing twenty-year bonds to raise a fund to pay judgment indebtedness is a pledging of a city's credit for a corporate purpose, within the meaning of paragraph 5 of section 1 of article 5 of the City and Village act.

3. SAME—*city may issue twenty-year bonds to raise money for corporate purposes.* A city organized under the general law may issue twenty-year bonds to raise money for corporate purposes, either under paragraph 5 of section 1 of article 5 of the City and Village

act or under section 1 of the act of 1865, as amended in 1879. (Laws of 1879, p. 229.)

4. SAME—*notice of election under act of 1879, relating to issue of bonds, need be published but once.* The notice of an election to vote upon the question of issuing bonds for corporate purposes, under the act of 1865, as amended in 1879, (Laws of 1879, p. 229,) need not be published more than once.

5. SAME—*a judgment against a city is an evidence of indebtedness.* A judgment against a city is an evidence of indebtedness, within the meaning of the act of 1865, as amended in 1879, (Laws of 1879, p. 229,) authorizing the issue of new bonds by a municipal corporation to re-place old bonds or other evidences of indebtedness issued by the city.

6. SAME—*what items are a part of a city's indebtedness.* Judgments against a city unprovided for; the water fund debt; general bonds and water bonds, are items which are part of the indebtedness of a city, within the meaning of the constitution.

7. SAME—*what items are not a part of a city's indebtedness.* Bonds issued under an amendment to the constitution adopted for the particular purpose of permitting the city to issue them, notwithstanding it had exceeded its limit of constitutional indebtedness; money held by the city treasurer to pay special assessment warrants when presented; unpaid amounts which the city has been assessed for public benefits in special assessment cases; amount of tax anticipation warrants; and floating indebtedness, the money to pay which is in the city treasury, are not part of the indebtedness of the city, in a constitutional sense.

8. SAME—*amount due sinking fund is not a debt against a city.* The amount due the sinking fund is not an indebtedness of the city, but the amount in the treasury which can be properly applied to the sinking fund should be deducted, in estimating the city's indebtedness, from the total amount of the city's bonded indebtedness other than bonds which are not, in a constitutional sense, an indebtedness of the city.

APPEAL from the Circuit Court of Cook county; the Hon. L. HONORE, Judge, presiding.

This was a bill in chancery filed by the appellant, a resident and tax-payer of the city of Chicago, in the circuit court of Cook county, against the city of Chicago, its mayor, Carter H. Harrison, and Lawrence E. McGann, its comptroller, to enjoin the issue and sale of $4,000,000 twenty-year three and one-half per cent bonds of the city

about to be issued and sold, the proceeds arising from the sale of which were to be used in paying an equal amount of judgments before that time rendered by the Federal courts and the courts of record in the State of Illinois against the city of Chicago. An answer and replication were filed, and upon final hearing the bill was dismissed for want of equity, and the record has been brought to this court for review by appeal.

The appellant contends that the issue and sale of said bonds should be enjoined upon the following grounds: First, the city has no power to issue twenty-year bonds, from the sale of which to obtain a fund with which to pay its judgment indebtedness; second, if the power of the city to issue twenty-year bonds for the purpose of obtaining a fund from the sale thereof with which to pay its judgment indebtedness be conceded, nevertheless, as the indebtedness of the city, in the aggregate, exceeds five percentum of the value of its taxable property as ascertained by the last assessment for State and county taxes, the city is prohibited from issuing said bonds by virtue of the inhibition contained in section 12 of article 9 of the constitution of 1870, which, in part, is as follows: "No county, city, township, school district, or other municipal corporation, shall be allowed to become indebted in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five percentum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness."

The record shows that at a regular meeting thereof on the 22d day of September, 1902, the city council of the city of Chicago duly passed an ordinance providing for the issue and sale of $4,000,000 twenty-year three and one-half per cent bonds under the provisions of paragraph 5 of section 1 of article 5, chapter 24, of Hurd's Revised Statutes, which reads as follows: "To borrow

money on the credit of the corporation for corporate purposes, and issue bonds therefor, in such amounts and form, and on such conditions as it shall prescribe, but shall not become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate to exceed five (5) percentum on the value of the taxable property therein, to be ascertained by the last assessment for the State and county taxes previous to the incurring of such indebtedness; and before or at the time of incurring any indebtedness, shall provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years after contracting the same."

The ordinance contained the following preamble: "Whereas, the city of Chicago is indebted to divers persons on account of judgments heretofore recovered against the city of Chicago, which said judgments the city of Chicago desires to pay, and to that end to issue negotiable bonds therefor and with the proceeds thereof to satisfy said judgments in full." And section 3 reads as follows: "Said bonds shall be sold by the comptroller of the city of Chicago at public or private sale, at a price not less than their face or par value, and the proceeds thereof shall be used for the exclusive purpose of canceling and retiring the like amount of the indebtedness of the city of Chicago evidenced by judgments recovered against it in the Federal courts and in the courts of record of the State of Illinois.   Said bonds shall be issued and delivered simultaneously with the surrender, cancellation, satisfaction and release of a like amount of the judgment indebtedness which said bonds are issued to pay."

It further appears that at a regular meeting of the city council of the city of Chicago held on the 16th day of March, 1903, there was presented to the city council a petition, signed by ten legal voters of said city, ask-

ing the corporate authorities of said city to submit to
the voters of the city, at the general election to be held
therein on the 7th day of April, 1903, the question of is-
suing $4,000,000 twenty-year three and one-half per cent
bonds, for the purpose of raising a fund with which to
pay and discharge the judgments theretofore rendered
against said city in the Federal courts and the courts of
record in the State of Illinois; that upon the presenta-
tion of said petition the city council duly passed an or-
dinance for the issue and sale of $4,000,000 twenty-year
three and one-half per cent bonds, under the provisions
of section 1 of an act entitled "An act to amend an act
approved April 27, 1877, entitled 'An act to amend an
act entitled an act relating to county and city debts, and
to provide for the payment thereof by taxation, in such
counties and cities,' approved February 13, 1865, and to
amend the title thereof," approved June 4, 1879, in force
July 1, 1879, (Hurd's Stat. 1899, p. 1301,) which in part
reads as follows: "That in all cases where any county,
city, town, township, school district, or other municipal
corporation, has issued bonds or other evidences of in-
debtedness, for money, or has contracted debts, which
are the binding, subsisting legal obligations of such
county, city, town, township, school district, or other mu-
nicipal corporation, and the same, or any portion thereof,
remain outstanding and unpaid, it shall be lawful for the
proper corporate authorities of any such county, city,
town, township, school district, or other municipal cor-
poration, upon the surrender of any such bonds or other
evidences of indebtedness, or any number or portion
thereof, to issue, in lieu or place thereof, to the owners
or holders of the same, new bonds prepared as herein-
after directed, and for such amounts, upon such time not
exceeding twenty years, payable at such place, and bear-
ing such rate of interest, not exceeding seven percentum
per annum, as may be agreed upon with the owners or
holders of such outstanding bonds or other evidences of

indebtedness.   \*   \*   \*   And it shall also be lawful for the proper corporate authorities of any such county, city, town, township, school district, or other municipal corporation, to cause to be thus issued, such new bonds, and sell the same to raise money to purchase or retire any or all of such outstanding bonds or other evidences of indebtedness; the proceeds of the sales of such new bonds to be expended, under the direction of the corporate authorities aforesaid, in the purchase or retiring of the outstanding bonds or other evidences of indebtedness of such county, city, town, township, school district, or other municipal corporation, and for no other purpose whatever."

The ordinance contained the following preamble: "Whereas, the city of Chicago is indebted to divers persons on account of judgments heretofore recovered against the city of Chicago, which said judgments the city of Chicago desires to pay, and to that end to issue its negotiable bonds therefor pursuant to an act of the legislature of the State of Illinois approved February 13, 1865, and amendments thereto; and whereas, by a petition signed by ten (10) legal voters, resident therein, the corporate authorities of said city have been requested to submit to the voters thereof, at the next general election, the question of issuing such bonds to the amount of $4,000,000." Section 3 reads as follows: "Said bonds shall be sold by the comptroller of the city of Chicago at a price not less than their face or par value, and the proceeds thereof shall be used for the exclusive purpose of canceling and retiring the like amount of indebtedness of the city of Chicago evidenced by judgments recovered against it in the Federal courts and in the courts of record of the State of Illinois. Said bonds shall be issued and delivered simultaneously with the surrender, cancellation, satisfaction and release of a like amount of the judgment indebtedness which said bonds are issued to pay."

The election was held on April 7, 1903, and the majority of all the votes cast were in favor of the proposition to issue $4,000,000 twenty-year three and one-half per cent bonds. It also appears that the value of the taxable property in the city of Chicago for the last assessment for State and county taxes was $402,495,131, five per cent (the debt limit) of which was $20,124,756.

It is agreed that the judgments mentioned in the ordinance dated September 22, 1902, and the ordinance dated March 16, 1903, are the same judgments, and that the city does not intend to issue bonds in amount in excess of $4,000,000.

The following statement made by Mark M. Foote, general accountant in the city comptroller's office, was introduced in evidence as defendants' "Exhibit 1:"

STATEMENT OF ALL DEBTS OF CITY OF CHICAGO SEPT. 30, 1903:

| | | |
|---|---:|---:|
| I. Bonds (general) | $6,963,000.00 | |
|  " (world's fair) | 4,517,000.00 | |
|  " (water) | 3,643,000.00 | |
| | | $15,123,000.00 |
| II. Judgments *vs.* city, unprovided for | | 4,871,182.83 |
| III. Due special assessment fund | 1,518,943.92 | |
|  public benefits due from city April 30, 1901, as per verbal | | |
|  report Haskins & Sells | 1,744,347.02 | |
| | | 3,263,290.94 |
| IV.     WATER FUND DEBT. | | |
|  Water certificates | 750,000 00 | |
|  Water pipe extension certificates | 462,657.43 | |
|  Accrued interest | 47,660.24 | |
|  Outstanding warrants on treasurer and deposits | 86,866.72 | |
| | | 1,347,184.39 |
| V. Anticipation tax warrants | | 4,093,000.00 |
| VI. Due sinking funds | | 2,433,656.09 |
|  Portion included in this amount due sinking funds for | | |
|   which there is no provision by the city......$1,384,049.87 | | |
| VII. Accrued interest (corporate) | 205,666.54 | |
|  Bonds and coupons matured, covered by deposit for pay- | | |
|   ment of same | 22,202.28 | |
|  Unpaid pay-rolls covered by funds with city paymaster.. | 368,027.66 | |
|  Due trust and special deposit funds, covered by cash with | | |
|   treasurer | 514,813.08 | |
|  Warrants on city treasurer outstanding | 512,772.90 | |
|  Due pension fund covered by cash in treasury | 42,677.44 | |
| | | 1,666,159.90 |
|   Total | | $32,797,474.15 |

ROBERT R. BALDWIN, for appellant:

An issue of bonds to refund old bonds or an existing debt increases the amount of 'municipal indebtedness. *Doon Township* v. *Cummins,* 142 U. S. 366.

The limit of indebtedness of the city of Chicago has already been exceeded, and the power does not exist at

this time to issue bonds in any amount. Const. of 1870, art. 9, sec. 12; Rev. Stat. chap. 24, art. 5, sec. 63.

The legislature has not conferred the power on the city to refund judgments, and the city, as an agency of government, has no other powers than those that are conferred or necessarily implied. *Cook County* v. *McCrea*, 93 Ill. 236; *Law* v. *People*, 87 id. 385; *Coquard* v. *Oquawka*, 192 id. 355.

Chapter 113 of the Revised Statutes of Illinois does not authorize the issue of the bonds in question. Judgments are not evidence of indebtedness, within the meaning of this section. *Ambler* v. *Whipple*, 139 Ill. 311; *Crum* v. *Sawyer*, 132 id. 443.

The city of Chicago has no authority, under the general law, to issue refunding bonds to take up judgments, because the power to borrow money is not incidental to its corporate powers. *Nashville* v. *Ray*, 19 Wall. 468.

The grant of power to borrow money for one year to pay judgments is an exclusion of a grant for any other term. *Expressio unius est exclusio alterius.* Coke's Litt. 210a; Broom's Legal Maxims, 505.

A corporate purpose for which money may be borrowed is a purpose specifically named by statute, and not any purpose deemed convenient by the officials of the city. *Drake* v. *Phillips*, 40 Ill. 388; *Taylor* v. *Thompson*, 42 id. 9; *County of Hardin* v. *McFarlan*, 82 id. 138; *Coquard* v. *Oquawka*, 192 id. 355.

When the statute points out a method to be pursued no other method is available. *Locke* v. *Davison*, 111 Ill. 19; *County of Hardin* v. *McFarlan*, 82 id. 138.

EDGAR B. TOLMAN, Corporation Counsel, (COLIN C. H. FYFFE, of counsel,) for appellees:

The city of Chicago has authority to issue bonds to pay its judgment indebtedness, either under the act of February 13, 1865, or under paragraph 5, section 1, article 5, of the City and Village act.

The act of 1865, as amended, applies to debts incurred after the passage of the act and to bonds issued to pay judgment indebtedness. Its provisions as to publication of notice of the election, at which the question of the bond issue was submitted to vote, was satisfied by a single publication. *Jenkins* v. *Pierce,* 98 Ill. 652; *Weld* v. *Rees,* 48 id. 432; *Cushman* v. *Stone,* 69 id. 530; *Magnusson* v. *Williams,* 111 id. 455; *Aldis* v. *Park Comrs.* 171 id. 424.

The city of Chicago has the power to issue the bonds under the provisions of clauses 5 and 6 of section 1, article 5, of the City and Village act. *Huron* v. *Bank,* 86 Fed. Rep. 272; *Insurance Co.* v. *Mead,* 13 S. D. 37; *Rogan* v. *Watertown,* 30 Wis. 257; *Quincy* v. *Warfield,* 25 Ill. 279; *Hyde Park* v. *Ingalls,* 87 id. 13; Simonton on Mun. Bonds, sec. 126.

PENCE & CARPENTER, counsel by leave of court:

The phrase "other evidences of indebtedness for money," used in section 1 of chapter 113 of the Revised Statutes, is broad enough to include a judgment debt. *Port Huron* v. *McCall,* 46 Mich. 565.

A judgment of record, even though rendered in an action of tort, is a debt contracted. 3 Blackstone's Com. 158-164; *Morse* v. *Tappan,* 3 Gray, 411; *Taylor* v. *Root,* 43 N. Y. 344; *Gray* v. *Bennett,* 3 Metc. 526; *Port Huron* v. *McCall,* 46 Mich. 565; Chitty on Contracts, (4th Am. ed.) 2.

The words "has contracted debts," in the foregoing act, are used by the legislature as expressing the same idea as do the words "has incurred liabilities." 2 Century Dic. 1231; Webster's Dic. 314.

Whenever the charter of a municipality contains express power and authority to issue bonds, the limitations upon that power and authority must be read out of the charter itself. The power once granted, the right to issue bonds for any corporate purpose exists, unless expressly or impliedly restricted by the charter itself. Sutherland on Stat. Const. secs. 408, 412; Endlich on Interp. of Statutes, sec. 108; *Port Huron* v. *McCall,* 46 Mich. 574.

The payment of judgment debts is a corporate purpose. *Taylor* v. *Thompson*, 42 Ill. 9; *Corwith* v. *Galena*, 48 id. 423; *Burr* v. *Carbondale*, 76 id. 475; *Morris* v. *Bank*, 84 id. 418; *Hyde Park* v. *Ingalls*, 87 id. 13; *Cairo* v. *Everett*, 107 id. 25; *Amy* v. *Galena*, 7 Fed. Rep. 156; *Weismer* v. *Douglass*, 64 N. Y. 91.

Section 3 of article 7 of the City and Village act does not limit the power of the city of Chicago to the borrowing of money for one year only, in order to pay off judgment debts. The clause there relating to judgments is a proviso attached to section 3, and applies only to those judgments rendered upon emergency contracts entered into by the municipality after the general appropriation bill has been passed. *Spring* v. *Olney*, 78 Ill. 101; *Bank* v. *Keith*, 84 Ill. App. 107; *Wolf* v. *Baueris*, 72 Md. 481; *In re Webb*, 24 How. Pr. 247; *Lehigh Co.* v. *Meyer*, 102 Pa. St. 479; *Cushing* v. *Warrick*, 9 Gray, 382; *Misch* v. *Russell*, 136 Ill. 22; *In re Partington*, 6 Q. B. 653; Endlich on Stat. Const. sec. 186; Sutherland on Stat. Const. secs. 222, 223.

To extend the operation of a proviso to other than the specific paragraph to which it is attached, the legislative intention so to do must be clearly expressed. Sutherland on Stat. Const. sec. 223; *Pearce* v. *Bank*, 33 Ala. 693; *Bank* v. *Collector*, 3 Wall. 495; *Bank* v. *United States*, 19 id. 227.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

It is first contended that as cities are given power to borrow money with which to pay judgments recovered against such municipalities by the last paragraph of section 3 of article 7 of the City and Village act, that method of raising funds with which to pay the judgment indebtedness of a city is exclusive. By section 1 of said article 7 it is provided that the fiscal year of cities shall commence at the date established by law for the annual election of municipal officers therein, or at such other

time as may be fixed by ordinance. By section 2, that
city councils shall, within the first quarter of each fis-
cal year, pass an ordinance to be known as the annual
appropriation bill, in which shall be specified such sum
or sums of money as may be deemed necessary to defray
all necessary expenses and liabilities of such corpora-
tions, together with the objects and purposes thereof,
and the amount appropriated for each object and pur-
pose, and that no further appropriation shall be made
at any other time within such fiscal year unless the
proposition to make such appropriation has been first
sanctioned by a majority of the legal voters of the city,
either by petition or at a general or special election.
By section 3, that neither the city council nor any de-
partment or officer of the city shall have the right to add
to the corporate expenses, in any one year, anything
over and beyond the amount provided for in the annual
appropriation bill for that year, and that no expendi-
ture for any improvement to be paid for out of the gen-
eral fund of the city shall exceed in any one year the
amount provided for such improvement in the annual
appropriation bill, but that the city council may by a
two-thirds vote order any improvement, the necessity of
which is caused by any casualty or accident happening
after the annual appropriation has been made, and that
the city council by a two-thirds vote may order the mayor
and finance committee to borrow a sufficient amount to
provide for the expense necessary to be incurred in mak-
ing any improvement the necessity of which has arisen
by reason of any casualty or accident which has hap-
pened since the annual appropriation has been made, for
a space of time not exceeding the close of the next fiscal
year, which sum, and the interest thereon, shall be in-
cluded in the next general tax levy; and should any judg-
ment be obtained against the city, the mayor and finance
committee, under the sanction of the city council, may
borrow a sufficient amount to pay the same, for a space

of time not exceeding the close of the next fiscal year, which sum and interest shall in like manner be added to the amount authorized to be raised in the general tax levy of the next year. And by section 4, that no contract shall be made by the city council, or any committee or member thereof, and no expense shall be incurred by any officer or department of the city, whether the object of the expenditure has been ordered by the city council or not, unless an appropriation shall have been previously made concerning such expense, except as otherwise provided by statute.

The sections of article 7 above referred to pertain to the annual expenditures of cities, and a method is provided therein whereby funds may be raised to meet the temporary pressing financial wants. of such municipalities by a system of short loans, which in no event shall extend beyond the close of the next fiscal year. Those sections do not, in express terms or by implication, refer to or limit the powers of cities to borrow money on twenty-year bonds, conferred upon such municipalities by paragraph 5 of section 1 of article 5 of the City and Village act, or by section 1 of the act of 1865, as amended. Neither is the power to make the temporary loans provided for in article 7 inconsistent with the powers conferred upon cities under said other legislative enactments to make long time loans and issue bonds therefor, and from a consideration of all the legislation upon the subject it seems plain that cities have the power to issue twenty-year bonds for the purpose of obtaining funds for corporate purposes, and with which to raise money to retire outstanding bonds issued by or other indebtedness due from such municipalities, and that section 3 of article 7 of the City and Village act contains no limitation upon those powers, but that such powers are as full and complete as though said section 3 was not in force.

In the case of *City of Huron* v. *Second Ward Savings Bank*, 30 C. C. A. 38, (86 Fed. Rep. 272,) one of the objec-

tions made to a recovery upon the bonds sued upon was, that the power granted by the charter to the city council to pay current expense warrants of the city by a tax levy implies the exclusion of the power to fund such warrants by the issue of negotiable bonds. The court said: "The contention would be worthy of serious consideration if the express power to issue negotiable bonds was not also granted to the city council by this charter; but the charter grants to the council authority 'to appropriate money and provide for the payment of the expenses and indebtedness of the corporation,' and gives it both the power to levy taxes and the power to borrow money and issue bonds for this purpose. It cannot be that the grant of either of these powers excludes either, and the choice of the method by which the indebtedness of the city should be paid is left to the discretion of the council."

The question then arises, is the borrowing of money by the issuing of twenty-year bonds, from the sale of which a fund is to be raised wherewith to pay the judgment indebtedness of the city, the pledging of the city's credit, within the meaning of paragraph 5 of section 1 of article 5 of the City and Village act, for corporate purposes? Those purposes have been defined to be such purposes as are germane to the objects of the welfare of the municipality, or, at least, have a legitimate connection with those objects and a manifest relation thereto. Anderson's Law Dic. p. 265; *Board of Supervisors of Livingston County* v. *Weider*, 64 Ill. 427; *People* v. *Dupuyt*, 71 id. 651; *Burr* v. *City of Carbondale*, 76 id. 455.

In *Taylor* v. *Thompson*, 42 Ill. 9, a tax for a corporate purpose was said to be one to be expended in a manner which shall promote the general prosperity and welfare of the municipality which levies it.

In *National Life Ins. Co.* v. *Mead*, 13 S. Dak. 37, suit was commenced to compel the treasurer of the city of Pierre to pay certain interest coupons. One defense was, that the city was without power to issue funding bonds. The

statute under which the bonds were issued was identical with paragraph 5 of section 1 of article 5 of the City and Village act of this State. The court said (p. 43): "It will be observed that this law gives express power to borrow money by issuing bonds for corporate purposes. Did this confer power to issue bonds for the purpose of funding the floating indebtedness? An affirmative answer to this inquiry is supported by the following decisions: *Morris & Whitehead* v. *Taylor*, (Ore.) 49 Pac. Rep. 660; *City of Huron* v. *Second Ward Savings Bank*, 30 C. C. A. 38; 86 Fed. Rep. 272; *Portland Savings Bank* v. *City of Evansville*, (C. C.) 25 Fed. Rep. 389. * * * The statute expressly makes the power to issue bonds co-extensive with the power to borrow money. Either may be exercised for any corporate purpose, and the payment of legal municipal debts is clearly a corporate purpose. If a city has power to borrow money by issuing bonds for the purpose of lighting its streets, it clearly has power to borrow money in the same manner to pay an indebtedness incurred for the same purpose. Had the legislature contemplated there would be no floating indebtedness under any circumstances, cities would have been authorized to borrow only for the purpose of paying outstanding bonds. We think the city was authorized to issue bonds for the purpose of funding its indebtedness."

In *City of Huron* v. *Second Ward Savings Bank, supra,* which was a suit to recover upon municipal bonds, the court said: "Another objection to these bonds is, that the city of Huron was without power to issue them. The position is not entitled to extended consideration, because the power granted by the charter of the city of Huron is plenary. It was general—not special. It was not limited to specific purposes, but was to borrow money and issue bonds for all municipal purposes. It was 'to borrow money, and for that purpose to issue bonds of the city in such denominations, for such length of time not to exceed twenty years, and bearing such rate of interest

not to exceed seven per cent per annum, as the city council may deem best.' The whole is greater than any of its parts, and includes them all. The power to borrow money and issue bonds for all municipal purposes includes the power to do so to pay or refund the indebtedness of the municipality."

If it be a corporate purpose, as we think it is, to issue and sell twenty-year bonds to pay the judgment indebtedness of a city, the bonds in question may be issued under the authority of paragraph 5 of section 1 of article 5 of the City and Village act, notwithstanding that the same power may be conferred by the act of February 13, 1865, as amended, as that act upon its face does not in any way purport to be exclusive. The power given by paragraph 5 of section 1 of article 5 of the City and Village act is a general power, and although other acts may confer on cities and villages the power to issue bonds, the general power conferred upon cities by the City and Village act is not thereby taken away.

If the city has power to issue the bonds the issue and sale of which are sought to be enjoined, by virtue of paragraph 5 of section 1 of article 5 of the City and Village act, a consideration of the power of the city under the act of 1865, as amended, to issue said bonds would seem to be unnecessary. We have, however, thought it best briefly to examine the power of the city, under that act, to issue said bonds.

As preliminary to the question of the right of the city to issue said bonds under the act of 1865, as amended, it is said the notice of the election should have been published for three successive weeks, instead of once, as was done, and the ballot used at the election was not in the form prescribed by the statute. Under the authority of *Weld* v. *Rees*, 48 Ill. 428, and *Jenkins* v. *Pierce*, 98 id. 646, the notice was sufficient; and the only criticism made upon the form of the ballot is, that it contained more, rather than less, than the law required. The ballot was

in form substantially like the one prescribed by the statute, and was sufficient.

It is next contended that a judgment does not fall within the designation "other evidences of indebtedness issued for money," within the meaning of the language used in the act of 1865, as amended, and does not, therefore, fall within the purview of that statute. One authority, only, in point,—that of *City of Port Huron* v. *McCall*, 46 Mich. 565,—has been cited upon the proposition that judgments are within the meaning of the language used in that statute. The city of Port Huron had issued its bonds in aid of the construction of the Port Huron and Lake Michigan railroad. Default was made and judgment was rendered for the amount thereof against the city. New bonds were issued, and said judgment indebtedness was refunded under the provisions of the following section of the city charter: "No loan, bond or other evidence of debt not expressly authorized by this act, or any act hereby continued in force, shall be made or issued by the common council or any board or officer of the corporation: *Provided, however*, that the common council, subject to the approval of the board of estimates, may issue new bonds for the refunding of bonds and evidences of indebtedness already issued." The new bonds having matured and default having been made in the payment thereof, suit was brought thereon, and the city defended on the ground that the judgment was not evidence of debt already issued, and that the city council was therefore without power to issue said bonds under the foregoing section of its charter, with which to refund said judgment. The trial court overruled the city's contention, and its judgment was affirmed by the Supreme Court. Judge Cooley, in speaking for the court, in part said: "It is also said that refunding bonds may be issued only for the refunding of 'bonds and evidences of indebtedness already issued,' and a judgment is not an evidence of indebtedness issued. A judg-

ment is the act of a court; but the refunding provision intends the obligations which the city itself has issued as evidences of its indebtedness, the bonds, notes, etc.; and this view is strengthened by the following section, (sec. 12, p. 231,) which provides that 'all bonds and evidences of debt, when refunded, shall be canceled and destroyed by the treasurer, in the presence of the comptroller and a special committee of the common council appointed for that purpose. He shall record and keep an accurate description of all bonds and evidences of debt thus canceled and destroyed.' A judgment, it is said, cannot be thus canceled and destroyed. * * * This view of the statute is * * * very narrow and technical. * * * It is easy to say that a judgment is not an evidence of indebtedness issued, but it is just as easy to say the contrary, and with quite as good reason. A judgment is not only an evidence of indebtedness, but it is of the highest and most conclusive nature. And there is no straining of language in saying that the judgment is issued. * * * And what difficulty there can be in canceling and destroying a judgment I do not understand. The utterance of the judge pronouncing it cannot be destroyed; the book in which it is entered is to be preserved as a perpetual record; but the judgment as an evidence of indebtedness is canceled when it is paid and receipted. * * * There is a principle of law that municipal powers are to be strictly interpreted; and it is a just and wise rule. Municipalities are to take nothing from the general sovereignty except what is expressly granted; but when a power is conferred which in its exercise concerns only the municipality and can wrong or injure no one, there is not the slightest reason for any strict or literal interpretation with a view to narrowing its construction."

The reasoning found in the opinion in that case is satisfactory and convincing, and conclusive of the right of the city of Chicago to issue said bonds under the act

of 1865, as amended, to raise a fund from the sale thereof, with which to pay its outstanding judgment indebtedness.   The bonds, when issued, will be no less valid by reason of the fact that they may properly be issued under either act,—that is, under paragraph 5 of section 1 of article 5 of the City and Village act, or under the act of 1865, as amended.

We will next consider the indebtedness of the city of Chicago, with the view of determining whether the issue of said bonds is prohibited by the constitutional prohibition which fixes the limit of said indebtedness at an amount not to exceed five percentum of the value of the city's taxable property, as shown by the last assessment for State and county taxes.   This will be done, taking defendants' "Exhibit 1" as a basis.

Item I.—In item 1 of said exhibit appears, "Bonds (world's fair) $4,517,000."   These bonds were issued under section 13 of article 9 of the constitution of 1870, which section was adopted as an amendment to the constitution in the year 1890.   The funds arising from the sale of said bonds were used in aid of the World's Columbian Exposition.   At the time the amendment was adopted the city was in debt beyond the constitutional limit, and the object of the amendment was to confer upon the city power to issue said bonds notwithstanding the constitutional limit of five per cent.   It is therefore clear that said bonds should not be taken into consideration in determining the amount of the city's indebtedness under the debt limit of five per cent fixed by the constitution.

Item II.—An elaborate argument has been presented by the solicitor for appellee with a view to induce the court to hold that the item, "Judgments *vs.* city, unprovided for, $4,871,182.83," should not be included in the computation in ascertaining how much the indebtedness of the city is with reference to the constitutional limitation.   In *City of Chicago* v. *McDonald*, 176 Ill. 404, it was held that judgments were debts against the city, and that

the amount thereof should be computed in ascertaining whether the constitutional limitation had been exceeded. We are not disposed to recede from the position taken in that case.

Item III.—The amount, "Due special assessment fund, $1,518,943.92," is money held by the city treasurer with which to pay assessment warrants when presented, and is in no sense a debt of the city. The amount of "Public benefits due from city April 30, 1901, as per verbal report Haskins & Sells, $1,744,347.02," represents the amounts which the city has been assessed for public benefits in numerous assessment cases and which remain unpaid, and under the authority of *Jacksonville Railway Co.* v. *City of Jacksonville*, 114 Ill. 562, is not a debt of the city in the sense of the constitutional limitation.

Item IV.—The "Water fund debt," amounting to $1,347,184.39, is an indebtedness of the city. *City of Joliet* v. *Alexander*, 194 Ill. 457.

Item V.—The amount of "Anticipation tax warrants, $4,093,000.00," under the authority of *City of Springfield* v. *Edwards*, 84 Ill. 626, is not, in the constitutional sense, a debt of the city.

Item VI.—The evidence shows that $1,049;606.22 is the total amount in the city treasurer's hands which can be properly applied for sinking fund purposes. The item, "Due sinking funds, $2,433,656.09," is not a debt of the city, but the amount in the hands of the city treasurer belonging to the sinking fund should be deducted from the amount of the city's bonded indebtedness other than world's fair bonds. *Rice* v. *City of Milwaukee*, 100 Wis. 516; *Kelly* v. *City of Minneapolis*, 63 Minn. 125.

Item VII.—This item represents the floating indebtedness of the city and the money with which to pay the same, with the exception of "Accrued interest (corporate), $205,666.54," is in the city treasury. The "accrued interest" item is a debt. The other items are not debts of the city within the constitutional limitation.

We conclude, therefore, that the following items found in said "Exhibit 1" in a constitutional sense constitute the debts of the city and must be taken into account in determining its debt limit:

| | | |
|---|---|---|
| I. Bonds (general)....................................................$6,963,000.00 | | |
| 　" 　(water)....................................................3,643,000.00 | | $10,606,000.00 |
| II. Judgments *vs.* city, unprovided for........................ | | 4,871,182.83 |
| IV.　　　　WATER FUND DEBT. | | |
| Water certificates ........................................ | $750,000.00 | |
| Water pipe extension certificates............................ | 462,657.43 | |
| Accrued interest............................................ | 47,660.24 | |
| Outstanding warrants on treasurer and deposits.......... | 86,866.72 | |
| | | 1,347,184.39 |
| VII. Accrued interest (corporate)............................ | | 205,666.54 |
| | | $17,030,033.76 |
| From which must be deducted the cash sinking fund on hand....... | | 1,049,606.22 |
| Total indebtedness.................................................. | | $15,980,427.54 |

From the foregoing statement it appears that the issue of the $4,000,000 bonds sought to be enjoined would not increase the indebtedness of the city of Chicago beyond the sum of $20,124,756, its constitutional debt limit.

The position has been taken by appellees that even though the city were found to be indebted beyond the limit prescribed by the constitution, nevertheless the issue of the bonds in question would be valid for the reason that their issue does not increase the indebtedness of the city of Chicago, as the ordinances authorizing their issue provide, "said bonds shall be issued and delivered simultaneously with the surrender, cancellation, satisfaction and release of a like amount of the judgment indebtedness which said bonds are issued to pay." In view of the fact that the indebtedness of the city does not exceed its debt limit within the meaning of the constitution, the question thus raised has not been considered and no opinion with reference thereto is expressed.

The decree of the circuit court of Cook county will be affirmed.　　　　　　　　　　　　　　　*Decree affirmed.*