[No. 6874.]

Manly v. Board of County Commissioners of Pueblo County. .

1.  Counties—Refunding County Indebtedness—Under sec. 6, art. XI, of the Constitution as amended in 1888, any debt of the county which may be funded may be refunded.—(494)

2.  Election—Proposition Including Separate Issues of Bonds —Under the statute in force in 1899, it was not improper to submit to the electors of a county, as a single proposition, the question of refunding two distinct series of outstanding bonds. The doctrine of Denver v. Hayes, 28 Colo. 110, has not·the controlling application to the question.—(495)

3.  Election—Notice—A notice of an election under the Act of April 18th, 1899 (Laws 1899, ch. 90, p.·166, Rev. Stat., sec. 1370-1374), for refunding the indebtedness of a county, required the electors to vote upon the question at the general election, the date of which was specified and the voting places sufficiently indicated. Held, that the omission to specify in the special election notice the particular places at which the electors were to·present their ballots upon this question, was immaterial.—(497)

*Appeal from Pueblo District Court*—Hon. J. E. Rizer, Judge.

Mr. George C. Manly, plaintiff in error, *pro se.*

Mr. Alva B. Adams, Messrs. Devine, Dubbs & Preston, and Mr. Lucius W. Hoyt, for defendant in error.

Mr. Justice Campbell delivered the opinion of the court:

The object of this action was to enjoin the board of county commissioners of Pueblo county from issuing $350,000.00 refunding bonds after a favorable vote of the people at an election. Relief was denied and plaintiff appeals. The case went off on a general demurrer to the complaint. It appears from the complaint that in the year 1906 there was an outstanding and unpaid indebtedness of Pueblo county in the sum of $350,000.00, evidenced by refunding bonds issued by the county in January, 1897, under authority of a vote of the people, and there were no funds in the treasury available for their redemption or payment. The board thereupon, for the purpose of refunding these bonds and to reduce the rate of interest, in pursuance of the statute (Session Laws 1899, p. 166), resolved to submit to the qualified electors of the county, at the general election to be held in the county in November, 1906, the question of their redemption. The majority vote at the election was in favor of the issue, which the board was about to consummate when this action was instituted.

Plaintiff urges three objections to the validity of the proposed issue. Preliminary to their discussion, and as a general statement of facts, it should be said that the $350,000.00 outstanding debt was evidenced by a series of refunding bonds aggregating that amount, of date January, 1897. This series was made up of a previous indebtedness evidenced by two separate issues of funding bonds, the first made in 1884, of which $125,000.00 was unpaid, and the second, of $225,000.00, in 1885, to take up an old indebtedness contracted by the county prior to the adoption of the state constitution, in giving aid to certain railroads under the authority of the terri-

torial statutes then in force. In 1888 sec. 6 of art. XI of the constitution was amended, and therein it was provided that no county shall contract any debt by loan in any form, except for the purpose of erecting public buildings, making or repairing public roads and bridges. The amount of the indebtedness was limited, and there was this proviso to the amended section:

"That any county in this State which has an indebtedness outstanding, either in the form of warrants issued for purposes provided by law prior to December 31, A. D. 1886, or in the form of funding bonds issued prior to such date for such warrants previously outstanding, or in the form of public building, road or bridge bonds outstanding at such date, may contract a debt by loan by the issuance of bonds for the purpose of liquidating such indebtedness, provided the question of issuing said bonds shall, at a general or special election called for that purpose, be submitted to the vote of such of the duly qualified electors of such county as in the year last preceding such election shall have paid a tax upon property assessed in such county, and the majority of those voting thereon shall vote in favor of issuing the bonds. Such election shall be held in the manner prescribed by the laws of this State for the issuance of road, bridge and public building bonds, and the bonds authorized at such election shall be issued and provision made for their redemption in the same manner as provided in said law."

1. The first contention of plaintiff is, as we understand it, that the bond issue of 1897, which it was proposed to refund, is itself illegal because, under amended sec. 6 of art. XI of the constitution, the county was prohibited from making that bond issue, because the debt for which such bonds were issued was not contracted for public buildings, mak-

ing, or repairing, public roads, bridges, or funding debts. While not conclusive upon this question, yet having some weight, our general assembly has from time to time (Session Laws 1883, page 142; Session Laws 1889, page 31; Session Laws 1895, page 152; Session Laws 1899, page 166; Session Laws 1901, page 149) passed acts for refunding county bonds. Sec. 6 does not in express terms authorize refunding, but refunding is not thereby prohibited. A refunding is merely a funding again or anew. The section clearly authorizes funding of bonds to pay an illegal debt; indeed that was its principal purpose, and it would seem necessarily to follow that whatever debt can be funded, may be refunded by the same authority. *In re Funding of County Indebtedness,* 15 Colo. 421, this section was before the court for consideration. In so far as the decision in that case bears upon any question here involved, the ruling was that the proviso of the section was intended to enlarge the power of the legislature, and its chief object was to permit the funding of illegal indebtedness, which could not be done before, and the court said it did not refer to the funding of legal indebtedness, whether incurred prior to or after December 31, 1886, the loans subsequent to that date being left as before the amendment was adopted. We think the clear inference to be deduced from that decision is that legal county indebtedness which existed prior to the adoption of this amendment might have been funded as the original law then stood and in accordance with its limitations, although the constitution did not expressly authorize the act of funding. If such indebtedness could be funded under the constitution as it existed before 1888, it could also be refunded.

In *Geer v. Board of Commissioners,* 97 Fed. 435, it was held that this amended section does not inhibit the general assembly from authorizing counties to

issue refunding bonds, because a refunding of a debt is not creating a new debt. So, also, *Board of Commissioners v. Platt,* 79 Fed. 567. Therefore, in so far as plaintiff's objection goes to the lack of authority in the board of county commissioners to fund or refund a pre-existing valid debt, whether the same is funded or refunded or in the form of warrants, on the ground that it is contracting a debt by loan and is in conflict with sec. 6, his position is untenable. This section of the constitution does not inhibit defendant board to make the proposed issue of refunding bonds.

2. It is next objected that because the refunding bonds issued in 1897, which it was proposed to redeem by the proposed issue of new refunding bonds, was itself made up of two previous bond issues, one in 1884, the other in 1885, and the proposition to refund them was submitted to the voters as one proposition, the same was void because in one submission there are two distinct propositions which should have been submitted separately. The general rule, as laid down in *City of Denver v. Hayes,* 28 Colo. 110, is that two schemes of public improvement ought to be submitted separately, so that the voter, if he desires, may approve the one and disapprove the other. Just how or why this rule is applicable to the submission in question, we are at a loss to conceive. If the objection has any merit at all, it should have been made to the bond issue of 1897 and not to the one of 1906. Not having been made to the original issue of 1897, and the same having been negotiated to innocent purchasers, it would be clearly inequitable and unauthorized now to declare the proposed issue invalid because the original debt, now evidenced by the issue of 1897, and which it is proposed to redeem, was incurred for different purposes and at different times. It is entirely conclu-

sive, however, to say that the proposition to refund several issues of bonds is not double in any true sense of that term. By the same line of reasoning it could be said that each of the bonds making up the old and the proposed issue is a separate item or a separate debt, and that as many separate propositions should be submitted as there are, or will be, separate bonds.

3. The board submitted to the electors the refunding proposition at the general November election of 1906. Notice of the same was given under the refunding act of 1899 (Session Laws 1899, p. 166). It is not contended that the election notice which the board prepared was not published and posted as required by law. The only objection is that it does not designate the polling places in the different precincts where the voters should cast their ballots. The notice, however, does say that the question submitted is to be voted upon at the general election to be held in the county in November. The county clerk, as he is required to do under the statute which regulates general elections, published in a newspaper, as required by law, and posted at the designated place of voting in each of the precincts in the county as required by the same statute, a notice for the holding of the general election. The voters having been legally notified by the special election notice, under the refunding act, that the proposal submitted was to be voted for at the general election, we think it a fair inference to say that the voters were thereby required to seek in this immediate locality their respective polling places, by ascertaining where the notices of the general election were posted under the general election law. Therefrom each elector learned that the polling booths were at, or in the immediate vicinity of, the places where the general election notices were posted, and he was advised that he was to cast his ballot upon the refunding proposition at

the same place, or in the same booth, where he was to cast his ballot for public officers at the general election. Quite in point in line with our conclusion are *Packwood v. County of Kittitas*, 15 Wash. 88; *State v. Salt Lake City, Utah*, 99 Pac. 255; and a late case from Utah not published officially, *State v. Carbon County*. See, also, *Fletcher v. Mayor*, 59 Atl. 90. In these cases the published notice of the election for voting upon such propositions did not specify the places in the various precincts where the election was to be held; but as the special election was to be held at the same time, and in connection with the general election, the published and posted notice of which designated the places where voting was to be conducted, it was held that the voters thereby were advised of the place where they should cast their ballots on the question specially submitted.

These being the objections urged against the proposed validity of the issue of bonds, and, as according to our view, they are untenable, the judgment of the district court, which denied the injunction prayed for, is affirmed.                *Affirmed.*

Decision *en banc*.   All the justices concurring.