# Richardson, City Auditor, et al. v. Board of Education of City of Ashland.

(Decided April 21, 1925.)

## Appeal from Boyd Circuit Court.

1. Time—Fiscal Year for School Purposes in Cities of Second Class Begins January 1st—"Current."—Under Acts 1922, c. 52, section 26; Ky. Stats., section 3176, fiscal year for school purposes in cities of second class begins January 1st; "current," as used therein, meaning then running; Ky. Stats., section 4365, not being applicable to cities of second class.

2. Municipal Corporations—Second Class City May Lend Surplus in General Fund to Board of Education.—City of second class may lend its surplus in general fund not derived from taxes levied for sinking fund, nor irrevocably set aside therefor to board of education which, under Acts 1924, c. 56, is authorized to borrow, in absence of statute to contrary and showing of injury to taxpayers.

JOHN T. DIEDERICH for appellants.

PRICHARD & MALIN and J. F. STEWART for appellee.

.Opinion of the Court by Judge Clay.—Affirming.

Ashland is now a city of the second class. It has in its general fund a surplus of $54,000.00 derived from the levy of 1924. In response to a resolution of the board of education of the city requesting a loan of $54,000.00 the general council of the city adopted an ordinance authorizing the loan. The auditor, clerk and treasurer refused to consummate the loan as required by the ordinance, and the board of education brought this action to compel them to do so. On final hearing the chancellor granted the relief prayed for, and the city officers have appealed.

It is first insisted that the board of education can not pledge its revenue for the fiscal year beginning July 1st, 1925, and ending June 30th, 1926, to take care of any indebtedness incurred during the fiscal year beginning with July 1, 1924, and ending June 30th, 1925. Without discussing any other feature of the case it is sufficient to say that this position proceeds on the erroneous assumption that the fiscal year for school purposes in cities of the second class is from July 1st to July 1st. In cities of the second class the fiscal year is from January 1st to January 1st. Section 3176, Kentucky Statutes. The statute provides that "the board of education shall annually

in the month of January approximately ascertain the amount of money which will be necessary to be used to defray the expenses of maintaining the schools, including sinking fund, repairs and improvements of buildings, and any liquidation of liabilities falling due *during the current fiscal year,* &c." Acts 1922, c. 52, section 26. As the estimate is for the entire current fiscal year, and "current" means then running, it necessarily follows that the estimate is not for any part of a prior year, nor for a year to begin in the future. Not only so, but the further requirement of the same section that "Not later than the month of March annually, the board of education shall adopt a resolution imposing and levying an *ad valorem* tax upon all the real and personal property subject to taxation and assessed by said city for general purposes at such rate not exceeding seventy-five cents on the one hundred dollars' valuation of said property, as shall, in the opinion of said board, be necessary to produce *in that year* the total estimated sum necessary to be raised to support and maintain the public schools of the city, less the estimated sum to be received from the state common school fund, &c.," Acts 1922, c. 52, section 26, leaves no doubt that the year referred to is the year then running, and of which March is a part, and not some other year. These provisions, coupled with the further fact that the legislature did not provide in the charter for any other fiscal year, make it clear, we think, that the school fiscal year is the same as the city fiscal year. It is true that the common school law provides that the school year shall begin on the first day of July, and end on the thirtieth day of June, section 4365, Kentucky Statutes, but that provision did not purport to change, or have the effect of changing, the fiscal year for school purposes in cities of the second class.

As boards of education in cities of the second class are specifically authorized to borrow money on the credit of the board in anticipation of the revenue from school taxes for the fiscal year in which the same is borrowed, and pledge the school taxes for payment of principal and interest of said loan, Acts 1924, c. 56, p. 94, there can be no doubt of the board's right to borrow in this instance, provided the city itself may make the loan.

It is insisted that the city is without power to make the loan because it has outstanding certain funding bonds that are callable at any time, and there is in force an ordinance authorizing the city treasurer to pay off these

bonds at any time out of any surplus funds coming into his hands that have not been appropriated to some other purpose at the time. The money in question was not derived from taxes that were levied for sinking fund purposes, nor was it irrevocably set aside for that purpose. On the contrary, the ordinance authorizing the city treasurer to pay the funding bonds out of any surplus on hand was subject to change by the general council, if deemed best that any part of that particular fund should not immediately be applied to that purpose. There is authority for the position that a municipal corporation may make a temporary loan of its surplus funds unless forbidden by statute. McQuillin on Municipal Corporations, vol. 5, section 2163, 28 Cyc. 1562. But we need go no further than the facts of this case require. The city has a surplus. The board of education needs money with which to meet its expenses until the taxes are collected. The only way that it can procure the money is through the medium of a loan. As the taxes due the board are paid directly to the city treasurer before they are distributed to the board, it is apparent that the municipality will run no risk in making the loan. Though the municipality and the board of education are separate and distinct corporations, the revenues of each are derived from the same taxpayers. Therefore, the loan of its surplus funds by one department to another is simply a case of accommodating the taxpayers with the use of their money. There being no statute to the contrary, and it not appearing that the taxpayers will suffer any injury by reason of the loan, we perceive no reason why it cannot be made.

Judgment affirmed.

Whole court sitting.