## Cherrie v. Greater Nanticoke School District

*Albert N. Danoff* and *Solomon Lubin*, for plaintiffs.
*Bernard J. Kotulak*, for defendant.

SCHIFFMAN, J., September 2, 1966.—This is an action in equity brought by residents and owners of property situated in Newport Township, Luzerne County, Pa. Plaintiffs are taxpayers who complain against the final budget adopted on June 30, 1966, by defendant, the Greater Nanticoke Area, a reorganized school district. Said budget included a separate assessment in the amount of 8 mills on the taxpayers of Newport Township for general obligation debt service.

Plaintiffs challenge the propriety of the budget adopted by defendant for the fiscal period July 1, 1966,

to June 30, 1967, and the related action thereto. They seek to restrain by injunction, preliminary and perpetual, the levying of the separate assessment in the amount of 8 mills on the taxpayers of Newport Township, pursuant to the adoption of the aforementioned budget by defendant. Plaintiffs also seek to restrain the collection of the aforesaid separate 8 mills tax. They request the amendment of the aforesaid budget and restraint against the levying and collection of the aforesaid separate assessment on the taxpayers of Newport Township, which they allege to be not in accordance with legal requirement.

## Statement of Pleadings and Issue Raised

Subsequent to the complaint filed July 26, 1966, both counsel of record entered into a stipulation which expressly stated that its content should be in lieu of all pleadings, both complaint and answer.

No testimony was presented, and the facts of record were agreed to in the aforementioned stipulation. It was agreed there were no facts in dispute, and that only a question of law was involved for the court's determination.

It was also stipulated that the same questions submitted for determination would be raised in a hearing on a preliminary or permanent injunction. It was further stipulated that one decision would represent the court's final determination on the merits.

The stipulated issue is as follows:

Whether debt contracted for operating expenses for a period of years prior to September 12, 1961, evidenced by the funding and refunding bonds issued prior to September 12, 1961, and further evidenced by refunding bonds issued after September 12, 1961, shall be an obligation upon the taxpayers of the component school district only which issued such bonds, or shall these refunding bonds be an obligation upon all the taxpayers of the Greater Nanticoke Area School Dis-

trict, pursuant to the Pennsylvania statute, which provides:

"All obligations of any component former school district evidenced by funding bonds issued after September 12, 1961, for the purpose of funding unfunded debt contracted for current operating expenses, shall continue to be an obligation of the taxable property within such component school district. . . ."

In general, specific findings of fact are essential to a valid decree in equity under Pennsylvania Rule of Civil Procedure 1517. A reading of the rule and its interpretation appears to make permissive a statement of the pertinent facts admitted, instead of making findings of fact within the present circumstances. However, in the interest of greater clarity of expression of the undisputed facts, we make the following

### FINDINGS OF FACT

1. Plaintiffs, to wit, Joseph and Edna Cherrie, 69 Roberts Street, Sheatown, Pa., and Edward A. and Florence Sowa, 43 Charles Street, Sheatown, Pa., are residents and owners of real estate situate in Newport Township, Luzerne County, Pa., and have paid and in the future will pay taxes duly assessed against them as the owners thereof, and they bring this action in behalf of themselves and all other taxpayers similarly situated, since the number of taxpayers are so numerous as to make it impractical for all of them to be joined as parties.

2. Defendant is the Greater Nanticoke Area School District, a reorganized school district consisting of school districts formerly in Conyngham Township, Nanticoke City, Newport Township, and Plymouth Township, all in Luzerne County, Pa., with its principal office at Nanticoke High School, East Main Street, Nanticoke, Pa.

3. On June 30, 1966, defendant adopted its final

budget and taxing resolutions attendant thereto for the fiscal period July 1, 1966, to June 30, 1967.

4. Said budget included a separate assessment in the amount of 8 mills on the taxpayers of Newport Township for general obligation debt service. A copy of the manner in which said amount was determined, compilation of the various bond issues of the component school district, and other relevant information is contained in exhibit "A" to the complaint and is incorporated into the record. All proceedings in the Court of Quarter Sessions of Luzerne County dealing with various bond issues set forth in exhibit "A" are incorporated by reference into the record.

5. The aforesaid separate 8 mills assessment was included by defendant pursuant to the School District Reorganization Act of August 8, 1963, P. L. 564, 24 PS §2-298(b)1 (Pocket Parts).

6. The bond issues of Newport Township School District, after September 12, 1961, consisted of the following:

(a) November 15, 1961: a refunding issue in the amount of $34,000;

(b) November 1, 1962; a refunding issue in the amount of $32,000, combined with an issue of $103,-000 for funding unfunded debt, for a total issue of $135,000;

(c) November 1, 1963: a refunding issue in the amount of $50,000;

(d) December 1, 1964: a refunding issue in the amount of $48,000;

(e) November 1, 1965: a refunding issue in the amount of $54,000.

7. All of the aforesaid bond issues, except for $103,-000 issued November 1, 1962, constituted refunding issues of floating debt contracted and incurred for a period of years prior to September 12, 1961. The aforesaid bond issues, beginning with November 1, 1963,

also included refunding of that portion of the $103,-000 which became due in those years.

8. Immediate and irreparable loss will result to plaintiffs and others similarly situated and to defendant if prompt disposition of this matter is not made.

9. Plaintiffs are without an adequate remedy at law.

DISCUSSION OF FACTS AND LAW

Although none of the parties to this action question that equity has jurisdiction, it is, nevertheless, our duty to inquire into the existence of jurisdiction: Harris-Walsh, Inc. v. Dickson City Borough, 420 Pa. 259, 263.

Our reading of the School District Reorganization Act does not reveal any statutory procedure provided by the legislature for the relief here sought. Assuming, arguendo, such statutory procedure was available, it need not be followed if it is inadequate to the task of resolving plaintiffs' objection or its pursuit will cause irreparable harm: Bliss Excavating Company v. Luzerne County, 418 Pa. 446, 451.

The stipulation of the parties as to immediate and irreparable loss and the lack of an adequate remedy at law is confirmed by judicial scrutiny. A ripe controversy has been generated by the challenged assessment levied. We do not note the existence of any legal remedy which adequately and completely would give plaintiffs the relief to which they allege they are entitled.

Equity's jurisdiction to adjudicate the invalidity of taxation for want of power to tax continues to endure. See Young Men's Christian Association v. Reading, 402 Pa. 592. We do not determine the instant facts to merely challenge an overassessment. The very power to levy and collect the assessment made is realistically in issue.

The official action already taken under the statute is of such nature and extent as to confer equity with jurisdiction to resolve whether or not the collection of

taxes should be restrained: Young Men's Christian Association v. Reading, supra, at page 598.

We have indicated the lack of statutory remedy. Within the circumstantial context of this case, we note no remedy at law as certain, prompt and efficient as the remedy in equity. We, therefore, determine that for the purpose of complete justice, the jurisdiction of equity is not precluded.

The circumstances presented for judicial determination involve several bond issues of Newport Township after September 12, 1961. All issues, except for $103,-000, issued November 1, 1962, constituted refunding issues of a floating debt contracted and incurred for a period of years prior to September 12, 1961. The bond issues involved, beginning with November 1, 1963, also included refunding of that portion of the $103,000 which became due in those years.

In essence, plaintiffs concede that the aforementioned $103,000 issue meets the statutory requirement of an exception which would impose this obligation upon the taxpayers of the former component school district. They maintain, however, that all of the other issues are "refunding" issues and should be the obligation of all the taxpayers of the Greater Nanticoke Area School District.

The reorganized defendant school district maintains, in effect, that all bond issues involved, whether funding or refunding, issued after September 12, 1961, remain the obligation of the component school district.

Our determination necessitates interpretation of the act of legislature as follows:

"Section 298. Property and Indebtedness and Rental Obligations of Former School Districts—(a) Except as otherwise provided in this section, all real and personal property, indebtedness and rental obligations to an approved school building authority or nonprofit corporation, if any, of former school districts composing

any school district constituted and deemed established pursuant to this subdivision (i) shall become the property, indebtedness and rental obligations of such newly established school district . . .

"(b) All obligations of any component former school district evidenced by funding bonds issued after September 12, 1961, for the purpose of funding unfunded debt contracted for current operating expenses, shall continue to be an obligation of the taxable property within such former component school district . . . as set forth pursuant to section 207 of the Municipal Borrowing Law . . .": Act of March 10, 1949, P. L. 30, art. II, sec. 298, added August 8, 1963, P. L. 564, sec. 3, as amended June 2, 1965, P. L. —, No. 59, sec. 1, 24 PS §2-198. See also 53 PS §6207, Municipal Borrowing Law.

It is a principle of statutory construction that in construing a legislative enactment, the court must ascertain and give effect to the legislative intention as expressed in the language employed: Bonasi v. Haverford Township Board of Adjustment, 382 Pa. 307, 310.

Both by statute and decisional law, the court is required to construe words and phrases according to their common and approved usage. The act of legislature involved is presumed to employ words in their popular and plain everyday sense. The popular meaning of the words employed must prevail unless the statute defines them otherwise or unless the context of the statute requires another meaning: Act of May 28, 1937, P. L. 1019, sec. 33, 46 PS §533; Harris-Walsh, Inc. v. Dickson City Borough, supra, at page 271.

The School District Reorganization Act did not create its own dictionary. There is no statutory definition therein of the words and phrases which require our interpretation.

The obvious concern of the legislature and the purpose of the act is summarized in section 290 of the 1963 act, which states explicitly the broad purposes of ful-

filling the legislature's Constitutional responsibility to provide for a "thorough and efficient system of public schools". Toward that end, section 290 states that the act is designed "to provide a flexible framework and effective and orderly means whereby the administrative units of the Commonwealth's public school system can be expeditiously reorganized": Chartiers Valley Joint Schools v. Allegheny County Board of School Directors, 418 Pa. 520, 530, 531.

The School District Reorganization Act contained several provisions applicable to the reorganization of school districts. Section 298, 24 PS §2-298, deals specifically with and is entitled: *Property and Indebtedness and Rental Obligations of Former School Districts.*

The original school district reorganization act, no. 561 (P. L. 1283), enacted in 1961, was approved by the Governor of the Commonwealth on September 12, 1961. This act provided without exception that *all* assets and liabilities of former component school districts would be assumed by the reorganized school district.

A reading of the legislative record reveals a similar status when the 1963 bill was introduced. However, subsequent consideration appeared to require an exception. Consequently, the 1963 bill, when passed, contained, inter alia, material changes in the form of an exception in section 298.

Two subsections were contained in section 298 as passed. Subsection (a) of the act provides "except as otherwise provided in this section", that, inter alia, all assets and liabilities of a component school district shall become the assets and liabilities of the reorganized school district.

Subsection (b) contains an explicit exception to such absolute assumption by the reorganized school district. This subsection states, inter alia, that:

"All obligations of any component former school dis-

trict evidenced by *funding bonds issued after September 12, 1961, for the purpose of funding unfunded debt contracted for current operating expenses,* shall continue to be an obligation of the taxable property within such former component school district". (Italics supplied).

The legislative intent in imposing this exception in sec. 298 (b) must realistically be gleaned from the language employed. Our interpretation must be mandated by strict construction. This rigid requirement relates to the construction of law which contains provisions imposing taxes. See Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 58(3), 46 PS §558(3); Pickering Estate, 410 Pa. 638, 648; Paper Products Company v. Pittsburgh, 391 Pa. 87, 94.

The requirement of strict construction must relate to the instant matter. The very essence of the issue raised challenges the statutory power of defendant to impose the tax complained of by plaintiffs.

The exception which continues to be an obligation of the former component school district refers to obligations *evidenced by funding bonds.* The meaning of funding bonds must be determined within the present circumstantial context of *refunding* issues. (Except for the stipulated issue of $103,000 issued November 1, 1962).

Fund is defined, "to convert into a more or less permanent debt bearing regular interest; as to fund the floating debt". Refund is defined, "to fund again or anew". See Webster's International Dictionary (2d ed. 1956).

Subsection (b) of section 298 of the School District Reorganization Act has a related reference to the Municipal Borrowing Law of June 25, 1941, P. L. 159, as amended. A reading of sections 6502 and 6503, 53 PS §§6502 and 6503, makes apparent that there is a definite statutory distinction between *funding* and *refunding* bonds.

The distinction between funding and refunding bonds has been recognized in many jurisdictions. The conversion of an outstanding debt into a more permanent form has defined and illustrated the *funding* of debt by the issuance of bonds. See City of Long Beach v. Lisenby, 180 Cal. 52, 179 Pac. 198, citing Webster's New International Dictionary, subject "fund" and Bouvier's Law Dictionary, subject "fund".

To "refund" is to replace that which has once been funded by a new fund. The term "refund" is given application to those forms of such indebtedness as had already once or oftener been funded by being put in the form of bonds: City of Long Beach v. Lisenby, supra, citing Webster's New International Dictionary, subject "refund".

To "fund" is to put in the form of bonds or stocks bearing regular interest, and to provide and appropriate a fund or permanent revenue for the payment of interest: Merrill v. Town of Monticello, 22 Fed. 589, 596, citing Webster's New International Dictionary and Bouvier's Law Dictionary. A "refunding" is merely funding again or anew: Manly v. Bd. of Commissioners of Pueblo County, 46 Colo. 491, 104 Pac. 1045.

There is a real distinction between funding and refunding bonds. With a single exception, the circumstances here involve refunding issues. The School District Reorganization Act does not include refunding bonds in the exception which continues to be an obligation of the taxable property within the former component school district.

Our attention is next directed to the statutory language, to wit, *issued after September 12, 1961*. That date represents when the original school district reorganization act was enacted and approved by the Governor. Without speculation as to the motivation, it is apparent that September 12, 1961, was enacted as the "cut off" date, and the exception in 298(b) was spe-

cifically related to *funding* bonds issued after September 12, 1961. Although the $103,000 issue is conceded to conform to the language contained in the exception, the other issues here involved were *refunding* issues made after the statutory "cut off" date. Those issues were not *funding* bonds issued after September 12, 1961.

We next consider the language employed in section 298(b) : *for the purpose of funding unfunded debt contracted for current operating expenses.*

We have previously noted distinction between sections 6502 and 6503 of the Municipal Borrowing Law. Subsections (a), (c) and (d) of the former section relate to funding an unfunded debt. Section 6503 indicates the statutory distinction and deals with refunding general obligation funds. See 53 PS §6502(a), (c) and (d), and section 6503.

*Funding* a debt, we have already noted, is to convert into a more or less permanent debt bearing regular interest. 26 C. J. S. 13—Debt: To fund generally means a bonded indebtedness. Employes' Retirement System v. Ho, 44 Hawaii 154, 352 P. 2d 861. On the other hand, an *unfunded* debt is one "not funded": Webster's International Dictionary, (2d ed. 1956). Funding an unfunded debt, therefore, creates a bonded indebtedness of an obligation or debt *not* previously funded.

Refunding has the clear meaning of refunding again or anew. A refunding bond issue is not the original creation of the bonded indebtedness. A refunding bond issue, within statutes relating to issuance of bonds by political subdivisions, is a bond issued to pay off an older issue. Before a debt can be "refunded", it must first have been *funded*: Lee v. Hancock County, 181 Miss. 847, 178 So. 790.

The obvious distinction between funding and refunding bonds precludes a loose exchange of those terms. Further, the Statutory Construction Act, 46 PS

§533, supra, requires a construction in accordance with apparent meaning and definition.

Our construction of section 298(b) must recognize legislative contemplation and intent to distinguish between bond issues for the purpose of funding an unfunded debt as compared with a refunding issue.

The statutory expression, "contracted for current operating expenses", also requires our interpretation.

"Current" is defined as "now passing, as time, or belonging to the present time or season; as, the current month; current fashions": Graham v. Miller, 137 F. 2d 507, 509; Webster's International Dictionary, (2d ed. 1956).

The word "current" applies to the time actually now passing, present in its course. As to current obligations, it denotes the obligations then passing or present in its progress. It does not include past due obligations of services rendered or obligations for services to be performed in the future: Pecos Mercantile Co. v. Texlite, Inc., 65 S. W. 2d 811 (Tex. Civ. App.). Also see Richardson v. Board of Education, 208 Ky. 464, 271 S. W. 549, for "then running" meaning of "current".

*Operating expenses* arise out of current operations of a concern, as distinguished from its financial transactions and permanent improvements. See Webster's International Dictionary (2d ed. 1956).

The refunding bonds in issue represent past indebtedness or an indebtedness prior to September 12, 1961. It is to be noted that although the original bonds represented an indebtedness for current expenses and, as such, may have retained their character as an indebtedness for operating expenses, they were no longer "current operating expenses" after the year in which they were incurred. They then became an indebtedness for "past" operating expenses.

We do not concur with defendant's contention that

the Newport bonds in controversy are funding bonds. Such conclusion negates the distinction which actually exists between *funding* and *refunding* bonds.

Defendant contends the instant case is controlled by the doctrine that "funding or refunding a debt previously created and existing is not an increase of that indebtedness, but is merely a continuance thereof". In support of this doctrine, defendant cites Madden v. Borough of Mount Union, 322 Pa. 109; Commonwealth ex rel. v. Cannon, 308 Pa. 321; and Schuldice v. City of Pittsburgh, 251 Pa. 28.

A reading of the Madden, Cannon, and Schuldice cases reveals that they are inapposite to the present circumstances. Their factual situations and legal issues do not involve pertinent similarity with the statutory construction now required to be determined.

The very "continuance" relied upon by defendant is not without its adverse effect within the statutory expression here involved. The very "continuance" of the debt must be related to the continuance of a "past" debt. A "past" debt is not included in the statutory exception which is presently before us.

The import of the decisions cited by defendant for the "continuing" status of the indebtedness would include refunding bonds for past indebtedness prior to September 12, 1961. The result would assign a retroactive effect to section 298 of the School District Reorganization Act. We do not note either expression or intent by the legislature for such retroactivity. It is significant that a retroactive status is contra to the Statutory Construction Act, 46 PS §556, which precludes a retroactive construction unless clearly and manifestly so intended by the legislature.

The bonds involved might be classified as a "current obligation", but not for "current operating expenses". The original character of the bonds as an indebtedness for current operating expenses is not of perpetual sta-

tus. The very meaning of "current" makes apparent that what is current in one year may be of different status in another. The passage of years here involved transformed what were originally "current" operating expenses into "past" operating expenses. The "operating expenses" characteristics may have been retained, but the distinction between "current" and "past" must merit our acknowledgement.

Defendant contends the legislature intended to absolve individual districts only in those instances where bonds were issued for the purpose of capital acquisitions and improvements. Such contention is unsupported in statutory expression. We cannot indulge in conjecture as to the legislative intent, and we are constrained to confine our construction within the periphery of legally authorized guidelines.

We are unable to concur with the conclusions reached by defendant in its sincere endeavor to interpret the pertinent statute involved. The bonds which are the subject of controversy are refunding and not funding bonds. They represent an indebtedness prior to September 12, 1961, although the legislature intended to include only indebtedness contracted for current expenses after that date. The refunding issues pertinently involved were not for the purpose of funding an unfunded debt contracted for current operating expenses.

The refunding issues in question are not included in the statutory exception contained in the School District Reorganization Act of August 8, 1963, P. L. 564, 23 PS §2-298(b). These refunding issues should be an obligation of all the taxpayers of the Greater Nanticoke Area School District. The only indebtedness which should remain the obligation of the taxpayers of Newport Township School District consists of the $103,000 issue.

The aforementioned $103,000 issue is an indebted-

ness which qualifies within the statutory exception to remain an obligation of the taxpayers of the Newport Township School District. The other issues involved are refunding issues not within the statutory exception and are the obligation of the taxpayers of the Greater Nanticoke Area School District.

CONCLUSIONS OF LAW

1. Equity has jurisdiction in this matter.

2. The $103,000 issue of November 1, 1962, is an indebtedness which qualifies within the statutory exception of section 298(b), 24 PS §2-298(b) (Pocket Parts), of the School District Reorganization Act, so as to remain the obligation of the taxpayers of the Newport Township School District, a former component school district.

3. The other issues subsequently referred to relate to all stipulated refunding bond issues of the Newport Township School District after September 12, 1961, which are here pertinently involved, and as distinguished from the $103,000 issue in the preceding paragraph.

4. The other issues involved were refunding and not funding bonds.

5. The other issues involved represent indebtedness prior to September 12, 1961, and were not funding bonds issued after September 12, 1961.

6. The other issues involved were not for the purpose of funding an unfunded debt.

7. The other issues involved were not for the purpose of funding an unfunded debt contracted for current operating expenses.

8. The other issues involved are not included within the statutory exception referred to in section 298(a) and (b), 24 PS §2-298(a) and (b) (Pocket Parts), of the School District Reorganization Act, and are the obligation of the taxpayers of the Greater Nanticoke Area School District.

9. Plaintiffs are entitled to the equitable relief hereinafter more specifically described in the decree of this court.

## ADJUDICATION

Accordingly, September 2, 1966, upon consideration of the foregoing case, upon stipulation of counsel waiving the necessity of separate proceedings on the preliminary and pursuant injunction, and upon stipulation of counsel that the decree entered herein shall be considered to be a final decree, it is ordered and adjudged that the following decree shall be entered by the Prothonotary of Luzerne County, upon praecipe, as the

## FINAL DECREE

Defendant, Greater Nanticoke Area School District, its directors, officers, agents and representatives, are restrained from the levy of a separate assessment in the amount of 8 mills on the taxpayers of the Newport Township School District, pursuant to the final budget adopted by defendant on June 30, 1966, and taxing resolutions attendant thereto.

Defendant, Greater Nanticoke Area School District, its directors, officers, agents and representatives, are restrained from collecting, and are directed to notify official and appropriate tax collecting authorities not to collect, the separate 8 mill tax, as aforesaid.

Defendant, Greater Nanticoke Area School District, its directors, officers, agents and representatives, are directed to amend its aforesaid budget so as to delete the separate 8 mill assessment as aforesaid, and to substitute therefor a separate tax which is to be computed in conformity with this decision and all legal requirements. Such properly computed substituted millage shall be levied and collected as a separate assessment on the taxpayers of the Newport Township School District.

Any tax legally authorized to be imposed upon all

the taxpayers of the Greater Nanticoke Area School District shall be computed, assessed, levied and collected in an amount which is in conformity with this decision and all legal requirements. Defendant, Greater Nanticoke Area School District, its directors, officers, agents and representatives, are further directed to amend the aforesaid budget in order to effectuate such result.

All costs involved in these proceedings shall be divided equally between plaintiffs and defendant.